A. A. Cooper Wagon & Buggy Company, Appellee, v. National Ben Franklin Insurance Company, Appellant.

INSURANCE: Waiver and Estoppel Based on Criminal Act. Waiver and estoppel result from the act of an insurer in issuing a policy and accepting the premium, with knowledge that the insured was then carrying other insurance in companies *not authorized to do business in this state,* and later attaching a rider to the policy authorizing such insurance, even though the attaching of such rider was a criminal violation of the Standard Policy Act. (Sec. 1758-b, Code Supp., 1913.)

NEW TRIAL: Appeal from Order Granting—Reversal. Error results from the granting of a new trial, when the evidence is not in controversy, and the record affirmatively shows that, as a matter of law, plaintiff cannot, in any event, recover.

INSURANCE: Agents—Scope of Employment. Policy-issuing agents have authority to attach riders to the policy authorizing additional insurance in companies *not* authorized to do business in this state.

INSURANCE: Knowledge of Company. An insured need not trace knowledge of a material fact beyond the duly empowered agent of the company with which he deals.

*Appeal from Dubuque District Court.*—J. W. Kintzinger, Judge.

February 17, 1920.

Action to recover upon three policies of insurance. Verdict for the defendant. On application of the plaintiff, a new trial was granted. Defendant appeals.—*Affirmed.*

*Seymour Edgerton* and *George T. Lyon,* for appellant.

*Hurd, Lenehan, Smith & O'Connor,* for appellee.

Gaynor, J.—The defendant issued three policies of insurance, insuring the plaintiff against loss by fire, one dated November 26, 1915, for $2,400; one dated December 15,

1915, for $2,500; and the third dated December 24, 1915, for $5,000, each expiring one year from date. The property covered by these policies was destroyed by fire on the 10th day of February, 1916. On the 16th day of December, 1916, this action was begun to recover for the loss. The policies were identical in form, and differed only as to dates and amount. Each was in the standard form prescribed by Section 1758-b of the Supplement to the Code, 1913. The amount sought to be recovered is $9,465.59, with interest from June 26, 1916.

1. INSURANCE: waiver and estoppel based on criminal act.

The defendant, answering, admits that its business was and is the issuing of fire insurance policies, in which it contracts and undertakes to indemnify those insured under its policies against loss or damage to the property described in its policy; alleges that it was fully authorized to do such business in Iowa, and that, at the time the policies in question were issued, it had, and now has, an agent and place of business in Dubuque, Iowa; admits that it issued the policies sued on, that it issued them in consideration of premiums paid therefor, but subject to the conditions named in the policy. It further admits that riders were attached to each of the policies on December 24, 1915, January 11, 1916, and February 4, 1916, respectively, and that the same were attached to each of the said policies on these dates. It further admits that, on the 10th day of February, 1916, the property covered by the policies was damaged or destroyed by fire; that due and legal notice of said fire and of the alleged loss under said policy was given to the defendant, pursuant to the terms of the policy; and that due and legal proofs of loss were furnished it, as required by the policy. It further admits that the amount of its liability, if any liability there is under the policy, is the sum mentioned in plaintiff's petition, to wit, $9,465.59, with interest.

With these admissions, the defendant, however, pleads defensively that the policies were void at the time the fire occurred, for that each provided that, unless otherwise provided by agreement of this company, the policies shall be void if the insured now has, or shall hereafter procure, any other contract of insurance, valid or invalid, on the property covered in whole or in part by the policies; that the only other provision of the policies allowing other contracts of insurance on the property is the following:

"It is hereby agreed that the insured may obtain other additional insurance in companies *authorized to do business in the state of Iowa.*"

The defendant alleges that, on and prior to February 4, 1916, and thereafter, until the happening of the fire, plaintiff had other contracts of insurance on the property in companies *not authorized to do business in the state of Iowa;* and says that it never authorized plaintiff to carry additional insurance in companies not authorized to do business in the state of Iowa, and had no knowledge that plaintiff was doing so; that, by reason thereof, each of said policies became null and void, under the conditions and terms of the policies themselves, and were not in force, and, therefore, not enforcible at the time the fire occurred. The defendant further alleged that it had no knowledge or notice that its agent at Dubuque, Iowa, Chester A. Ruff, had consented to the attachment of any riders to the policies, authorizing the plaintiff to take additional insurance in companies not authorized to do business in the state of Iowa; that any permit given by Chester A. Ruff to do so was given without the knowledge and consent of the defendant; that the granting of such permission, if granted, was beyond his power, and not within the scope of his authority as agent.

Plaintiff replies that the last rider, of the date February 4, 1916, became a part of the policy, and contained the provision "additional insurance permitted," without

any limitation as to whether the additional insurance
should be in authorized companies or not; that this rider
provided simply, "other insurance permitted;" that this
rider was attached under an agreement between the plain-
tiff and the defendant company, made through its agent,
Chester A. Ruff, and was attached to each policy on the
4th day of February, 1916.

Plaintiff further replied, by way of estoppel, that Ches-
ter A. Ruff is and was the recording agent of the defendant
at Dubuque, Iowa, and the one by whom the original poli-
cies were issued; that the said Chester A. Ruff, while act-
ing for the defendant in issuing the policies and attaching
the riders, knew that plaintiff was carrying, and intended
to carry, and continued to carry, insurance on the property
covered by these policies, in companies not authorized to do
business in the state of Iowa, and knew that plaintiff, in
procuring the rider of February 4, 1916, procured it to su-
persede the riders of December 24th and January 11th,
which limited additional insurance to companies authoriz-
ed to do business in the state of Iowa, and acquiesced and
consented to insurance in companies *not authorized to do
business in the state of Iowa;* that defendant issued the
policies and received the premiums with knowledge that
plaintiff was, at that time, carrying additional insurance
in companies not authorized to do business in the state.

Upon the issues thus tendered, the cause was tried to
a jury, and a verdict returned for the defendant. On mo-
tion of plaintiff, a new trial was granted, and from this,
defendant appeals.

For reasons which will appear later in this opinion,
the action of the court in setting aside the verdict and grant-
ing a new trial was right, unless it appear affirmatively in

the record that the plaintiff can, in no
event, succeed in the suit.    That is, if, un-
der the record, with the law correctly stat-
ed, and without error in the trial, the plain-

2. NEW TRIAL:
   appeal from
   order granting:
   reversal.

tiff cannot recover on the showing made, the court ought
not to grant a new trial; for, if that be so, the jury has
done what the court should have done at the close of all
the evidence, and the plaintiff is not prejudiced.    The grant-
ing of a new trial will be reversed in this court when it
affirmatively appears from the record that the plaintiff is
not entitled to recover, under any theory of the evidence.
We do not mean by this that, in appellate review, this
court weighs the evidence and determines for itself whether,
under the evidence, in its judgment, the plaintiff is en-
titled to recover under the record made; but we do say
that, where there is no controversy in the evidence, and the
record as made affirmatively shows that, as a matter of
law, plaintiff cannot recover in any event, then it is error
for the trial court to set aside a verdict against the plain-
tiff; for it cannot be said to be prejudicial error to deny
to one what in no event he has shown himself entitled to
receive.

This brings us to a consideration of the evidence, not
for the purpose of determining whether or not the plaintiff
is or is not entitled, from our viewpoint, to recover, but
whether or not there was a fair question for the jury, un-
der the record made, as to plaintiff's right to recover, and
for the purpose of further determining whether or not the
court sent the case to the jury without undue burden and
handicaps on the plaintiff in his effort to present the case
to the jury for its consideration.    It is the contention of
the defendant that the undisputed evidence shows that
plaintiff is not entitled to recover in this suit, and that the
court, therefore, erred in setting aside a verdict against
the plaintiff and in favor of the defendant.

It will be noted that the only defense urged to plaintiff's right to recover upon these policies is that it took and carried additional insurance in companies not authorized to do business in the state of Iowa, in violation of the terms of the policies. In issuing the policies in question, the defendant used the standard form of policy provided for by Section 1758-b of the Supplement to the Code, 1913. This form of policy provides, in Subdivision 1:

"It is hereby agreed that the insured may obtain $—— additional insurance in companies authorized to do business in the state of Iowa."

Section 1758-c provides:

"Any insurance company, its officers or agents, or either of them, violating any of the provisions of this act, by issuing, delivering or offering to issue or deliver any policy of fire insurance on property in this state *other or different from the standard form,* herein provided for, shall be guilty of a misdemeanor," and provides a fine for the first and second offenses, and further provides: "But any policy so issued or delivered shall, nevertheless, be binding upon the company issuing or delivering the same."

Section 1758-d provides:

"Nothing contained in this act nor any provisions or conditions in the standard form of policy provided for herein, shall be deemed  *  *  *  to prevent any insurance company issuing such policy, from waiving any of the provisions or conditions contained therein, if the waiver of such provisions or conditions *shall be in the interest of the insured.*"

Code Section 1749 provides:

"Any person who shall hereafter solicit insurance or procure application therefor shall be held to be the soliciting agent of the insurance company  *  *  *  issuing a policy on such application or on a renewal thereof, any-

thing in the application, policy or contract to the contrary notwithstanding."

Section 1750 of the Code of 1897 provides:

"The term agent used in the foregoing sections of the chapter shall include any other person who shall in any manner directly or indirectly transact the insurance business for any insurance company complying with the laws of this state. Any officer, agent or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust losses or transact the business generally of such companies, shall be held to be the agent of such insurance company with authority to transact *all business within the scope of his employment*, anything in the application, policy, contract, by-laws or articles of incorporation of such company to the contrary notwithstanding."

The record discloses, without any question, that Ruff was the agent of this company, and had an office at Dubuque for the transaction of the business of this company; that he had a right to issue policies for the company; that these forms of policies were sent to him already signed by the officers of the company; that he filled them out, attested them as agent, and delivered them to the plaintiff; that thereafter, some controversy arose between the plaintiff company and Ruff as to whether or not the provisions of the policy were broad enough to allow additional insurance in companies not authorized to do business in the state of Iowa. It appears that plaintiff procured and had this agent attach to the policies a waiver of any claim that the taking of additional insurance in companies not authorized would vitiate the policy. This, interpreted, was an agreement on the part of the company to permit plaintiff to carry additional insurance in companies not authorized to do business in Iowa. Thereafter, this contract or this waiver was canceled by this agent, by drawing a pen through the

same. Thereafter, the plaintiff, not being satisfied, caused Ruff to add to the policy the rider of February 4, 1916, which gives to the plaintiff the right to carry additional insurance, without any limitation in the rider as to the character of the companies in which the additional insurance had been or should be placed, or without any expressed limitation upon the right to carry insurance in companies not authorized to do business in the state of Iowa. It is true that the previous riders, attached on December 24th and January 11th, did limit the assured to companies authorized to do business in Iowa, but not as originally prepared; but the limitation to companies authorized to do business in Iowa was added there by the agent by the use of a typewriter: that is, the agent added, after the words "additional insurance permitted," as originally prepared, these words: "In companies authorized to do business in Iowa." That was the condition of these policies at the time plaintiff procured the rider of February 4, 1916, above referred to. The jury could well find that this rider of February 4th was attached with the understanding that it gave to the plaintiff the right to carry insurance in companies not authorized to do business in Iowa. The very fact that the limitation placed in the preceding riders was omitted from the last rider, suggests that this was the understanding of the parties. It appears that, at the time these policies were issued, and at the time this last rider was attached, plaintiff did have additional insurance in companies not authorized to do business in the state of Iowa. It is the contention of the plaintiff that this was known to the defendant's agent, Ruff, at the time the policies were issued, and at the time these riders were attached; and there is evidence supporting this contention.

Under this record, it is apparent that Ruff was the agent of the defendant company in the issuing of these policies, and issued the policies in this suit. Within the

scope of this agency is found the right to
3. INSURANCE:
agents: scope
of employ-
ment.
attach riders to the policy, such as were
attached here. He acted for the company
in the issuing of these policies, and acted
for the defendant in attaching the riders. Within the scope
of his employment was included the right to attach riders
to the policies. The section heretofore quoted provides that
such agent.is clothed with authority.to transact all busi-
ness within the scope of his employment. That Ruff had a
right to issue policies and to bind the company by the
policies issued, a right to attach riders to the policies, such
as are in controversy here, we think is not questioned.
Whether questioned or not, the right existed, under the
provisions of Section 1750, heretofore quoted. His knowl-
edge, while transacting the business of the company, was
the knowledge of the company, in respect to the matters in
which he was called upon to act for the company. The
agreement of the company was to the effect that other in-
surance might.be taken by the assured upon the property
covered by the policies issued. Other insurance was taken,
and the right to take the other insurance was given by the
contract of insurance. The only claimed violation of this
provision contended for, is the taking of other insurance in
companies not authorized to do business in Iowa. The jury
could well find that the defendant's agent, Ruff, knew, at
the time the policies were issued, that the plaintiff had in-
surance in companies not authorized to do business in
Iowa. The jury could well have found that Ruff knew this
at the time he attached the rider of February 4th. This
rider of February 4th destroyed the inhibition against other
insurance. It granted the right to take other insurance.
It did not limit the right to take other insurance to com-
panies authorized to do business in Iowa. This fact was
known to the agent, Ruff. The company could act only
through agents. Consent could be given only by authorized

agents. It is not questioned that it lay in the power of this agent, Ruff, to permit other insurance.

The contention that Ruff had no right to permit other insurance except in companies authorized to do business in Iowa, is predicated upon the thought that the standard form of policy provides for additional insurance only in companies authorized to do business in Iowa, and on the further thought that the statute places an inhibition upon any change in form from the standard form. It is argued that, inasmuch as the statute itself makes it a misdemeanor to issue a policy not in conformity with the standard form, it cannot be assumed that it was within the scope of Ruff's employment to agree or consent to that which involved the company in penal liability. But the statute itself provides that, notwithstanding the fact that the policy issued does not conform to the standard, the policy, nevertheless, is binding upon the company; and the statute itself authorized the company to waive any provision in the standard policy, if the waiver of such provision or condition were in the interest of the insured. The insured had, at the time the policies were issued, and at the time this last rider was attached, insurance in companies not authorized to do business in Iowa. The jury could well find that a waiver that protected him from forfeiture by reason thereof was to his interest, and that Ruff knew this at the time the policies were issued, and at the time the rider of February 4th was attached. It is not to be assumed that the company was playing fast and loose with the insured in this matter. It is not to be assumed that the agent, acting for the company, was playing fast and loose with the insured at the time he issued the policies, and at the time he attached the riders. If the agent, Ruff, at the time he issued the policies, knew that the defendant had other insurance in companies not authorized to do business in Iowa, as said before, his knowledge was the knowl-

edge of the company.  If, with this knowledge, the policies were issued, and the premiums received, the act of issuing the policy and the receiving and retaining of the premiums estops the company from claiming that additional insurance in companies not authorized to do business in Iowa voids the policy.  Good faith required the company to act promptly and repudiate its obligation if, on the 4th of February, as is contended now, the policies were void because of the fact of additional insurance in companies not authorized to do business in the state of Iowa.  Instead of acting, and repudiating its policies, it attached the rider of February 4th, omitting from the provisions the limitation which it says now invalidates the policies and renders them void.  When Ruff attached this rider of February 4th, we must assume that he was acting in good faith.  The jury could have found that he knew that plaintiff had this objectionable additional insurance.  In attaching this rider, he eliminated the limitation against this objectionable insurance.  It is idle for him to say that he did not know what this rider contained.  It was attached by him, and at the request of the insured.  He is bound to know its contents, and his knowledge is the knowledge of the company.  The plaintiff was not bound to trace knowledge beyond the agent of the defendant with whom he dealt.  Notice to the agent was notice to the company.  The riders might have provided expressly that the insured could take additional insurance in companies not authorized to do business in the state of Iowa.  This would not invalidate the policies under the statute hereinbefore cited.  The policy would be still binding on the company.  Further, though the policies provided expressly that no additional insurance should be taken upon the property covered by these policies, except in companies authorized to do business in Iowa, that provision might be waived, and the waiver would be binding on the company, under the provisions of the statutes here-

inbefore set out. Such waiver would be clearly for the bene-
fit of the insured, and, being for the benefit of the insured,
could be made by the company, and, when made, would be
binding on the company.

There is no provision in the statute as to how waiver
should be made. In *Lake v. Farmers' Ins. Co.*, 110 Iowa
473, it is said:

"The test [of a waiver] is whether the acts and con-
duct of the insurer are inconsistent with the intention to
insist on strict compliance with the terms of the policy and
statute. The waiver is put on the ground that an insurer
whose conduct is such as to induce the insured to rest un-
der a well-founded belief that strict performance with a
condition will not be insisted on cannot, in good faith, af-
terwards set up as a bar to recovery."

The plaintiff was a foreign company. It secured the
right to do business in the state of Iowa. It had a right to
do business in the state of Iowa. It placed the agent here
to transact that business for it. He was, in every sense,
the general agent of the company, with authority to trans-
act its business in the state of Iowa. It was a corporation.
It can act only through agents. Its agents are its hands,
its eyes, its feet. What its agent does in respect to the
matters committed to his charge, is the act of the com-
pany, and binds the company just as effectually as though
the company were a living and breathing entity, with pow-
er to act for itself, and acted. It is idle to say that the com-
pany did not know that which was within the knowledge
of its authorized agent. All it can know must come to it
through this avenue, and the knowledge of its agents is its
knowledge. The act of the agent, within the scope of his
authority, is its act. It cannot repudiate the act of its
agent and receive the benefits which flow from the act. If
Ruff knew, at the time he issued these policies, that the
plaintiff had insurance in companies not authorized to do

business in Iowa, then the company knew that fact. When Ruff issued the policies to the plaintiff, his act in so doing was the act of the company, and done with the knowledge which Ruff had, touching the subject-matter. When the policies were issued and the premiums paid, they were is-sued and the premiums accepted and retained with knowl-edge that plaintiff had insurance in companies not au-thorized to do business in Iowa. To accept the premium and issue the policies would be a clear fraud upon the plain-tiff, if the contention of the company here made is sustain-ed. The plaintiff had no dealing with any agent of the company except Ruff. It had no dealing with the com-pany at all, except through Ruff. Ruff was the *alter ego* of the company in this whole transaction, so far as the plaintiff was concerned. The waiver was complete when it was affirmatively shown, to the satisfaction of the jury, that Ruff had knowledge that the plaintiff was carrying insurance in companies not authorized to do business in Iowa at the time the policy was issued and the premium paid. Further, it was a clear waiver of any inhibition of the policy against the carrying of additional insurance in companies not authorized, when Ruff re-affirmed the policies by attaching the rider of February 4, 1916. The de-fendant is estopped to say the policy is void when, with knowledge of the fact that the plaintiff was carrying in-surance in companies not authorized to do business in Iowa, it issued the policies and accepted the premiums. It was a clear waiver of any inhibition in the policy against in-surance in companies not authorized, when it attached the rider of February 4th, for by this act it indicated to the in-sured that the policies were then in force, and not repudiat-ed because of the inhibition. Ruff testifies: "I had au-thority to issue policies I saw fit." A. A. Cooper, of plain-tiff's company, testified:

"I said to Ruff that we had insurance in unauthorized

companies, and he said he knew it; that it was common talk that we were carrying unauthorized insurance."

This was before the rider of February 4, 1916, was attached. However that may be, there was a clear conflict in the evidence as to the knowledge of Ruff of the fact that the plaintiff was carrying unauthorized insurance prior to February 4, 1916.

The court, in its instructions to the jury, eliminated from the consideration of the jury the legal effect of the knowledge of the agent who acted for the company in the transaction of the business involved in the issuing of these policies, and carried the impression to the jury that a burden rested on the plaintiff to show knowledge to the company, in some way other than and distinct from that which came to the company through its agent, in transacting the business, and conveyed to the jury the impression that the consent of the company must be shown in some way independent of the knowledge and consent of Ruff, its duly authorized agent, and, among other things, said:

**4. Insurance: knowledge of company.**

"If you fail to find from a preponderance of the evidence that the plaintiff did not know that the defendant's agent (Ruff) had no authority to consent to such unauthorized insurance, then it will be your duty to find your verdict for the defendant," and further: "If you fail to find from a preponderance of the evidence in this case that the plaintiff company did not know that the defendant company would not consent to the issuance of such policies, if the plaintiff was carrying other additional insurance in companies not authorized to do business in the state of Iowa, then, and in that event, it will be your duty to find your verdict in favor of the defendant."

Upon the whole record, we say there was a fair question for the jury as to the right of plaintiff to recover, upon the issues tendered, and a burden was laid upon plain-

tiff, in the presentation of the case to the jury, which the plaintiff was not required to carry.

Upon the whole record, we think the court was right in setting aside the verdict, and in granting a new trial. Its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.