Dale L. WEBB and Rickey
L. Webb, Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 91–869.

Supreme Court of Iowa.

Dec. 23, 1992.

Robert M. Benton of Stuyvesant & Benton, Carlisle, for appellants.

Nancy C. Coon, West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, American Family Insurance Company, challenges a court of appeals decision that an insurance policy American Family issued to appellees, Dale and Rickey Webb, was not void as a matter of law because Dale Webb had not committed a "material" misrepresentation in a proof of loss filed following a fire. We vacate the court of appeals decision, affirm the trial court decision to submit the question to the jury, and reinstate the jury finding that fraud had occurred. So finding, we are faced with the additional question of whether Rickey Webb is entitled to recover as an innocent coinsured under the voided policy. We conclude that she is not.

I. *Background facts and proceedings.* Dale and Rickey Webb were married in October 1970. In 1977, they moved to sixty wooded acres southeast of Hartford on which they built a campground. Dale and Rickey owned the property as joint tenants. Dale Webb designed and built a new family home on the grounds in 1984.

The Webbs held a homeowners insurance policy with American Family Insurance Company covering the property. The policy had stated limits of $104,000 for the dwelling and $52,400 for the personal property on the premises. Based on American Family's rating system, the actual coverage was $109,383 for the home and $54,692 for the personal property.

On September 18, 1989, the Webbs dissolved their marriage. Pursuant to their dissolution decree, Dale had sixty days from September 18, 1989, to pay Rickey $50,000 cash. If payment was made, Rickey would then convey all of her interest in the campground and home to Dale. If no payment was made, the campground and home would be sold, the Webbs' debts paid, and the remaining proceeds or debt split between them equally.

Rickey Webb and the Webbs' two children continued to live in the Hartford home until October 1, 1989. At that time, they moved to Carlisle. Dale Webb, who had been living in Des Moines, moved back to the Hartford home. For a short period, Dale's girlfriend Pam Walker lived there with Dale.

On November 16, 1989, fire completely destroyed the Webbs' home and its contents. The Webbs submitted a detailed proof of loss at American Family's request. The proof of loss claimed that personal property destroyed in the fire, all belonging to Dale only, was valued at $88,530.64. An insurance investigation followed.

American Family denied the Webbs' claim, alleging the insurance policy was void on several grounds. The insurer claimed that Dale was guilty of arson, but on special interrogatory the jury found that he did not deliberately set or cause the fire. Pertinent to this appeal, American Family also claimed that Dale had materially misrepresented the extent of the personal property lost in the fire with the intent to defraud the insurance company.

The Webbs brought suit against American Family to enforce the insurance policy and recover its proceeds. Before trial, the court ruled that Rickey could not recover as an innocent coinsured if the trial verdict invalidated the policy as a result of Dale's actions.

At trial, American Family presented evidence that Dale had intentionally misrepresented items of personal property lost in the November 16 fire. Pam Walker, Dale's former girlfriend, who lived with Dale on and off during the months preceding the fire, testified that she had extensive knowledge of the contents of the home and of Dale's personal effects before the fire. Of the 255 items Dale had listed in his proof of loss, she testified to her belief that ninety of these items either did not exist or the number of those items Dale owned was overstated. Most of these things were minor household goods and clothes. For example, she disputed the number of belts, shoes, and socks Dale owned. Pam did not know about most of the furniture listed as destroyed.

Andy Briggs, employed by American Family, testified that items listed by Dale were not found after sifting through the remaining debris despite these items' relative indestructibility. Specifically, Webb claimed the loss of a tool set containing around 200 pieces, yet Briggs found only three wrenches, a few screwdrivers, and a drill bit. Carol Little, a realtor who had shown the house to prospective buyers, testified that she did not recall seeing some of the items of furniture in the home that were listed as destroyed.

To the contrary, Rickey Webb testified that she believed Dale did in fact own many of the items which Pam Walker testified were nonexistent. Rickey, however, did not recognize a number of household furnishings and small appliances Dale claimed were lost. She also stated that she had taken a rolltop desk which the couple had owned, and did not know if Dale had purchased another which he had included in his proof of loss.

Dale explained that many of these furnishings were recently purchased from a used furniture store or an estate sale. He testified the furniture was purchased to replace what Rickey had taken when she moved out of the home. No evidence of the actual value of lost property was presented, except that Dale testified he had paid approximately $7000 to $8000 for some of the used furniture.

Conflicting evidence was presented concerning a Nikon camera. Pam never saw the camera. Dale said he purchased it from a camper on the grounds in 1989, but Rickey testified that the Webbs did not operate the grounds in 1989.

Following presentation of the evidence at trial, the Webbs moved for directed verdict on the defense of misrepresentation. The Webbs asserted that deducting the value of the disputed items from the total loss Dale claimed did not reduce the remaining undisputed loss below the policy limits. Therefore, the Webbs argued, the misrepresentations did not affect American Family's obligation to pay the policy limits of personal property loss, did not prejudice American Family, and were not "material." The trial court denied Webbs' motion and submitted the question of misrepresentation to the jury.

At trial, the jury responded affirmatively to a special interrogatory which asked, "Did Defendant prove its first affirmative defense, to-wit: That the policy of insurance is void because Plaintiff Dale Webb with intent to defraud, concealed a material fact or circumstance as to the extent of the personal property destroyed?" The Webbs were therefore denied recovery.

On appeal, the court of appeals reversed the trial court's denial of directed verdict. The court held that the misrepresentations were not material as a matter of law. The court so found because it believed the extent of property shown to be erroneously included by Dale in the proof of loss was only a small percentage of the actual loss. Because the disputed loss did not drop the actual loss below the policy limits, the misrepresentation was not material as a matter of law.

II. *Scope of review.* If there is substantial evidence to support each element of a claim or defense, a motion for directed verdict should be denied. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990); *Woodruff Constr. Co. v. Mains,* 406 N.W.2d 787, 789 (Iowa 1987). The district court must view the evidence in the light most favorable to the party against whom the motion is directed. *Johnson,* 451 N.W.2d at 171; *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978). Substantial evidence is necessary to support the district court's ruling. We view the evidence in the same manner on appeal. *Id.* Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Johnson,* 451 N.W.2d at 171. Simply put, we ask, was there sufficient evidence to generate a jury question? *Id.*

III. *Material misrepresentations in a proof of loss.* The American Family homeowners insurance policy held by Dale and Rickey Webb states:

2. Concealment or Fraud. This entire policy is void if, before or after a loss, any insured has:

a. intentionally concealed or misrepresented any material fact or circumstance;

b. engaged in fraudulent conduct; or

c. made false statements; relating to this insurance.

American Family denied the Webbs recovery of insurance proceeds because the company believed Dale willfully, with the intent to defraud, misrepresented the extent of his personal property lost. The parties' dispute rests solely on whether Dale's misrepresentations were "material" as required in the policy provision. Because we find that sufficient evidence existed to generate a question whether the misrepresentations were "material," the trial court properly denied the Webbs' motion for a directed verdict.

■ We agree with the court of appeals that mere mistaken recollections of household goods owned is not a misrepresentation amounting to fraud. Most homeowners do not keep a detailed inventory of their clothes, kitchen utensils, or other relatively low value household items. These minor discrepancies in a proof of loss are likely committed honestly without an intent to defraud the insurer. Such errors would not be grounds to void an insurance policy.

When, however, misstatements on a proof of loss form concern more memorable or valuable items or are committed consistently on a larger scale, a fraudulent attempt to recover proceeds from an insurer to which an insured is not entitled begins to appear. In these cases, the overstatement of minor household goods could constitute a material misrepresentation. If made with intent to defraud, the "fraud clause" would void the policy. At trial, the jury heard considerable evidence of the existence or nonexistence of a significant number of items claimed as lost. The jury had the opportunity to assess the credibility of these witnesses. Viewing the evidence in the light most favorable to American Family, sufficient evidence existed that Dale intended to defraud American Family by misrepresenting the extent of personal property destroyed.

■ Personal property in an insured's home is "material" insofar as it is the object of the insurance policy which covers it. The Webbs argued that a misrepresentation proven which is only minor compared to the policy limits or undisputed loss, or when the undisputed loss exceeds the policy limits notwithstanding the misrepresented property, is not material as a matter of law. In this case, we cannot agree both on a factual basis and as a matter of legal principle.

First, whether items were actually destroyed in a fire is difficult to prove. Even the most thorough investigation of a fire loss would not yield evidence to an insurer of everything that was purported to be destroyed. If the insurer can show that false swearing occurred as to some items claimed on a proof of loss, the jury may infer that the insured was dishonest about other items on the proof of loss for which the insurer cannot find evidence of nonexistence. Basically, the insurer casts doubt on the insured's honesty in submitting an inaccurate proof of loss; it is for the jury to decide if that doubt rises to a material false swearing.

Second, if we consider losses above policy limits not material as a matter of law an opportunity is presented for dishonest insureds to successfully defraud their insurers. For example, if an insured suffered an actual loss below insurance policy limits, he or she would be encouraged to falsify the proof of loss well above the policy limits. If the insurer could only prove some fraud, but not enough to reduce the remaining claim below the policy limits, then the fraudulent insured would take full policy limits recovery even though some fraud had been proven. In the context of difficult problems of proof such encouragement to falsify cannot be permitted.

We agree with the reasoning of the Washington Supreme Court in *Mutual of Enumclaw Insurance Co. v. Cox*, 110 Wash.2d 643, 757 P.2d 499 (1988). In *Cox*, fire destroyed the insured's lake house and all its contents. The insured submitted a proof of loss form which listed personal property losses totaling $324,420, greatly

exceeding the $137,000 unscheduled personal property coverage. Following the insurance company's investigation, no trace of certain items lost could be found from the sifted debris. The insurance company denied payment. The insured claimed any misstatement in the proof of loss was not material because the undisputed loss exceeded the policy limits. In response, the Washington court held the misrepresentation material. Citing supporting authority from other jurisdictions, the court stated:

> The rationale behind these decisions is that "the insured should be penalized for the wilfulness of his conduct regardless of the fact that the insurer would not have been required to pay any greater amount had the falsity not been demonstrated."
>
> [The insured] contends that the fraud was immaterial because his fraud did not prejudice [the insurer] since it bore no risk of additional loss. We do not find this argument persuasive. Insurance companies rely on insureds honestly filling out inventory lists of destroyed property. Dishonesty by insureds cannot be ignored.

*Id.* at 649, 757 P.2d at 502 (citation omitted). *Cf. Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 726 (Ky.1975) (claim for numerous nonexisting items in a sworn proof of loss is fraud as a matter of law and defeats recovery on the entire policy).

Sufficient evidence existed from which a jury could find that Dale Webb intentionally misrepresented the extent of personal property destroyed and that the misrepresentation was material. The jury so found. Pursuant to the terms of the insurance policy, the policy is void and Dale Webb is denied recovery.

■ IV. *Innocent coinsured doctrine.* Before trial, the Webbs applied for an adjudication of law points, asking the trial court to determine whether Rickey Webb would be entitled to recover insurance proceeds as an innocent coinsured if the court found the policy void for Dale's fraudulent acts. The trial court held that she could not. We affirm.

In *Vance v. Pekin Insurance Co.*, 457 N.W.2d 589 (Iowa 1990), we adopted the "best reasoned rule" to determine whether an innocent coinsured is barred from recovery when another insured acts in a manner which voids the insurance policy. Under this rule, recovery is determined by contract analysis of the insurance policy provisions. *Id.* at 592; *The Problem of the Innocent Coinsured Spouse: Three Theories on Recovery*, 17 Val.U.L.Rev. 849, 867–68 (1983) [hereinafter *Innocent Coinsured Spouse*]. Under the terms of the policy between American Family and the Webbs, paragraph two, *infra*, the policy is voided if prohibited acts are committed by any insured. Dale and Rickey Webb are both named insureds in the policy.

In *Vance*, we held that an insurance policy which precluded recovery if loss occurred as a result of the intentional acts of "an insured" was not ambiguous and precluded recovery for all insureds. In discussing the meaning of "an insured," we found that these words basically meant *"any* insured," an interpretation which precluded recovery. In fact, we stated in *Vance* that use of the word "any" would be the preferred language because it unambiguously conveys this intention:

> Perhaps the best solution to the entire problem is to revise the policy language. If the insurance companies intend the fraudulent acts of one spouse to void the policy as to both, the policy should be redrafted to reflect this position. The desired result could be obtained by substituting the term "the" insured in the fraud provision with "a," "any" or "an" insured. Drafting the policy to expressly deny recovery not only serves the interest of the insurance companies but also advances the public good by discouraging fraud.

*Vance*, 457 N.W.2d at 593 (quoting *Innocent Coinsured Spouse*, 17 Val.U.L.Rev. at 872).

Additionally, we stated that the decision whether to deny coverage does not depend upon how the insured property is held or upon whether the coinsureds are married. *Id.*

Dale Webb was an insured under the American Family policy. The jury found the whole policy void because Dale misrepresented a material fact or circumstance as to the extent of personal property destroyed. The clear meaning of the policy bars recovery for all insureds when the policy is voided by the acts of any insured. Rickey Webb therefore may not recover insurance proceeds under the American Family policy.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.