**Ramona SAGER, Appellant,**

v.

**FARM BUREAU MUTUAL INSURANCE CO.,**
Appellee.

No. 02–1433.

Supreme Court of Iowa.

May 12, 2004.

Rehearing Denied June 1, 2004.

John Werden of Van Dyke & Werden, P.L.C., Carroll, for appellant.

James Pugh and Paul S. Swinton of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for appellee.

STREIT, Justice.

A battalion of Beanie Babies has marched a legal question before us. While on a quest to torch his wife Ramona's Beanie Baby collection, Robert Sager nearly burnt down the family house. Ramona now seeks to collect under the couple's homeowners policy with Farm Bureau for Robert's pyromaniacal actions. The policy, however, contains an exclusion for "intentional loss" at the hand of "an insured." In a matter of first impression, we hold Iowa's standard fire insurance pol-icy, as set forth in Iowa Code section 515.138 (1999), renders the exclusion unenforceable. We reverse and remand for further proceedings.

## I.  Facts and Prior Proceedings

The facts are stipulated. Robert Sager intentionally set a fire in the basement of a house he shared with his wife Ramona in DeWitt. Angry after Ramona told him she was ending their relationship, Robert torched Ramona's Christmas decorations in the basement of their house.[1] The fire quickly spread, and portions of the house were soon engulfed in flames. Robert's pyromaniacal act caused approximately $100,000 damage to the house and its contents. Not surprisingly, Robert and Ramona later divorced.

At the time of the fire, Robert and Ramona were named insureds under a homeowners policy with Farm Bureau Mutual Insurance Company. When Ramona sought payment, Farm Bureau denied her claim. To justify its nonpayment, Farm Bureau cited exclusions in the policy for "intentional loss" and "concealment or fraud."

The "intentional loss" exclusion barred recovery for "any loss arising out of any act committed . . . (1)[b]y or at the di-rection of an 'insured' . . . and (2)[w]ith the intent or expectation of causing a loss." Farm Bureau contended this exclusion precluded payment to Ramona because

---

1.  At a deposition conducted months later, Robert described the scene and his subse-quent actions as follows:

    She had Beanie Babies everywhere and I was sick of them sons of bitches and I decided I was going to barbecue them. I had a big brush pile that I was going to burn outside and I had decided I was going to get all her Beanie Babies and take them out and barbecue the sons of bitches and went to get the charcoal lighter. Christmas has always been another big issue between us just because, you know, she sees it differ-ently than I do, and I went in the basement to get the charcoal lighter and take it up-stairs and fry her Beanie Babies and all her Christmas stuff was sitting there and I sprayed some charcoal lighter on her Christmas stuff and threw a couple of matches at it and it flared up a lot faster than I thought it was going to. . . .

    According to Ramona, 150 Beanie Babies and Buddies perished in the fire. She claimed $1100 in damages for these collectible dolls.

Robert, *an insured,* had purposefully started the fire.

The "concealment or fraud" exclusion barred coverage where an insured

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to [the] insurance.

Farm Bureau denied Ramona benefits under this exclusion because its "own investigation revealed substantial inaccuracies in [Ramona's 'Sworn Statement in Proof of Loss'] regarding the extent of damage to personal property." In a deposition conducted at Farm Bureau's invitation, Robert alleged many items in Ramona's sworn proof of loss statement were, in fact, undamaged or salvageable.

. After Farm Bureau denied her claim, Ramona sued to recover under the policy. In the district court, Ramona argued the "intentional loss" exclusion was unenforceable because it (1) did not meet the minimum provisions of Iowa's standard fire insurance policy, as set forth in Iowa Code section 515.138 (1999), and (2) was ambiguous due to a formatting error. The district court dismissed. First, the court ruled *Vance v. Pekin Insurance Co.,* 457 N.W.2d 589 (Iowa 1990), controlled, and, as a result, Ramona—albeit an "innocent coinsured spouse"—could not recover under a policy which barred recovery if "an insured" intentionally caused the loss. Second, the court held the formatting errors in the policy did not render the "intentional loss" exclusion ambiguous.

Although Farm Bureau had also argued Ramona could not recover under the policy because she had misrepresented the extent of her loss, the district court declined to "answer whether such misrepresentation bars Ramona from recovery."

The court of appeals reversed and remanded for entry of judgment in favor of Ramona. First, the court distinguished *Vance;* in *Vance,* we were not presented with the statutory argument, i.e., whether a policy which bars an innocent coinsured spouse from recovering violates Iowa Code section 515.138, our state's standard fire insurance policy. Pointing to the great weight of authority, the court of appeals concluded the "intentional loss" exclusion in the Sagers' policy violated the minimum protections afforded by the statute, and was therefore unenforceable. As a result, the court did not reach whether formatting errors also rendered the exclusion unenforceable. Second, the court of appeals determined "reasonable fact finders could differ on whether the inaccuracies on Ramona's proof of loss form rose to the level of material misrepresentations or fraud." Since this case was tried on stipulated facts, however, the court did not remand. The court of appeals reasoned the district court was in no better position than it to judge credibility, making a remand inefficient. The court simply held "Farm Bureau cannot establish the applicability of the concealment of fraud exclusion as a matter of law, [and therefore] it is not entitled to affirmance on this alternate ground."

Farm Bureau sought further review, which we granted. Farm Bureau contends the court of appeals (1) erred in holding Iowa Code section 515.138 renders the intentional loss exclusion in the policy unenforceable and (2) failed to hold Ramona's misrepresentations "material." Should we affirm the court of appeals' decision, Farm Bureau also asks us to provide guidance on how much Ramona is entitled to recover.

## II. Standard of Review

■ Our review is for errors at law. Iowa R.App. P. 6.4. Factual findings

made by the trial court are binding on appeal if supported by substantial evidence. *Id.* 6.14(6)(*a* ). This case was tried on stipulated facts in the district court. That is,

> To save expense, and to simplify the issue, the facts were agreed upon by the parties, upon which the court should render judgment. The parties, in effect, said to the court, "these are the facts, and now we wish judicially to know what are the rights of the parties thereunder."

*Logan v. Hall,* 19 Iowa 491, 495 (1865) (citations and emphasis omitted). Because this law action was tried on stipulated facts, then, our review is "limited to assigned error in the district court's application of law pertinent to the controversy." *Stewart v. DeMoss,* 590 N.W.2d 545, 547 (Iowa 1999).

### III. Merits

### A. The Problem of the Innocent Coinsured Spouse

#### 1. *Vance*

█ In *Vance v. Pekin Insurance Company,* we held that where one spouse had intentionally set fire to the family home, an innocent coinsured spouse could not recover under a homeowners policy which clearly and unequivocally excluded coverage from losses resulting from the intentional acts of *"an insured."* 457 N.W.2d at 593 (emphasis added). In *Vance,* we adopted the so-called "best reasoned rule," according to which "recovery depends ... on a contract analysis of the insurance policy provisions." *Id.* (citing Leane E. Cerven, Note, *The Problem of the Innocent Co-Insured Spouse: Three Theories of Recovery,* 17 Val. U.L.Rev. 849, 867–68 (1983)). We explicitly noted this contract analysis followed the recent trend in other courts away from analyses centering upon property rationales or the marital status of the parties. *See id.* We have consistently applied this contract analysis ever since. *See, e.g., Jensen v. Jefferson County Mut. Ins. Ass'n,* 510 N.W.2d 870, 872 (Iowa 1994); *Webb v. Am. Family Mut. Ins. Co.,* 493 N.W.2d 808, 812–13 (Iowa 1992). Other courts have followed suit. *See, e.g., Watson v. United Serv. Auto. Ass'n,* 566 N.W.2d 683, 688 (Minn.1997) ("The majority of courts use a contract-based theory which focuses on a contractual analysis of the insurance policy provisions ..."; policies which contain "an insured" bar recovery to an innocent coinsured spouse); *Noland v. Farmers Ins. Co.,* 319 Ark. 449, 892 S.W.2d 271, 272–73 (1995); *Volquardson v. Hartford Ins. Co.,* 264 Neb. 337, 647 N.W.2d 599, 605–06 (2002); *Wagner v. Midwestern Indem. Co.,* 83 Ohio St.3d 287, 699 N.E.2d 507, 511 (1998); *McAllister v. Millville Mut. Ins. Co.,* 433 Pa.Super. 330, 640 A.2d 1283, 1289 (1994); *Utah Farm Bureau Ins. Co. v. Crook,* 980 P.2d 685, 686 (Utah 1999). *See generally* 10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 149:49 (2003) ("whether arson by one coinsured spouse bars innocent coinsured spouse from recovering under policy depends not on property rationales or marital rights and obligations, but on contract analysis of insurance policy provisions....").

*Vance* contained an intentional loss exclusion similar to the case at bar. In *Vance,* we interpreted the phrase "an insured" in the policy to mean "an unspecified insured" who intentionally sets fire to the house. 457 N.W.2d at 593. That is, under the express terms of such a policy, if any insured sets fire to the house, all insureds are barred from recovering. *Id.* As a threshold matter, then, we find the provisions of the insurance contract at issue in this case bar Ramona's claim. As in *Vance,* the policy explicitly excludes coverage for "any loss arising out of any act

committed ... (1)[b]y or at the direction of an *'insured'* ... and (2)[w]ith the intent or expectation of causing a loss." (Emphasis added.) Applying a contract analysis, Robert's malfeasance plainly bars Ramona's right to recover.

### 2. Iowa Code § 515.138

After *Vance* was decided, however, a new question arose in other jurisdictions: If an innocent coinsured spouse is denied coverage under the express terms of the policy, do those policy provisions then violate the mandatory coverage provisions in state statutes? Citing a relatively recent Minnesota decision, *Watson v. United Services Automobile Association,* 566 N.W.2d 683 (Minn.1997), Ramona claims her policy, if interpreted to bar an innocent coinsured spouse from recovery, violates the mandatory minimum coverage set by Iowa statute.

Found in Iowa Code section 515.138, our state's standard fire insurance policy "lists various permissible standard provisions for fire policies...." *Thomas v. United Fire & Cas. Co.,* 426 N.W.2d 396, 397 (Iowa 1988). That is,

> It shall be unlawful for any insurance company to issue any policy of fire insurance upon any property in this state ... different from the standard form of fire insurance policy herein set forth.... An insurer may issue a [different] policy ... if such policy includes provisions with respect to the peril of fire which are the substantial equivalent of the minimum provisions of such standard policy....

Iowa Code § 515.138. Insurance companies which offer or issue policies "other or different from the standard form" are guilty of a simple misdemeanor. *Id.* § 515.140. Such policies, however, nonetheless remain binding upon the insurance company. *Id.; cf. A.A. Cooper Wagon &*

*Buggy Co. v. Nat'l. Ben Franklin Ins. Co.,* 188 Iowa 425, 430, 176 N.W. 309, 311 (1920) (recognizing, under earlier version of our standard fire insurance policy, that where policy does not conform to standard fire insurance policy, it is still binding upon the insurer). As we recently stated in another context,

> Notwithstanding the principle that the meaning of an insurance contract is generally determined from the language of the policy, statutory law may also affect our interpretation of policy provisions.... [W]hen a policy provision conflicts with a statutory requirement, the policy provision is ineffective and the statute controls.

*Lee v. Grinnell Mut. Reins. Co.,* 646 N.W.2d 403, 406 (Iowa 2002) (citations omitted).

The standard fire insurance policy itself is too lengthy to set forth here. As we have previously pointed out, however, "[t]he standard type of insurance policy is what is generally known as the New York type. It was first adopted in the state of New York and has been followed in Iowa and many other states since its original adoption." *Olson Enters., Inc. v. Citizens Ins. Co.,* 255 Iowa 141, 145, 121 N.W.2d 510, 512 (1963); *see also Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W.2d 799, 808 (Iowa 1973); *cf.* N.Y. Insurance Law § 3404 (2000) (setting forth present New York standard fire policy). Like other jurisdictions employing the New York policy, Iowa's standard fire insurance policy does not contain an exclusion for intentional loss; the policy does, however, consistently refer to "the insured" in policy exclusions. For example, the standard policy excludes coverage for losses due to "neglect of *the insured* to use all reasonable means to save and preserve the property at and after a loss ...," as well as losses occurring "[w]hile the hazard is in-

creased by any means within the control or knowledge of *the insured.*" Iowa Code § 515.138 (emphases added). Ramona argues the consistent use of the phrase "the insured" in the policy evinces a legislative intent to apply the exclusions only to the malfeasant insured, and not also to the innocent insured; when a homeowners policy denies coverage whenever "an insured" intentionally causes the loss, it conflicts with statute.

■ When interpreting our standard fire insurance policy, we look to the decisions of other jurisdictions with a similar policy. *See, e.g., Olson,* 255 Iowa at 145–47, 121 N.W.2d at 512–13 (looking to other states to resolve dispute about standard policy). Doing so, we discover Ramona's argument is supported by the great weight of authority. As the court of appeals noted, courts presented with this same question—and a growing number at that—have almost unanimously ruled in favor of the innocent coinsured spouse. *Watts v. Farmers Ins. Exch.,* 98 Cal.App.4th 1246, 1261, 120 Cal.Rptr.2d 694, 706 (2002); *Trinity Universal Ins. Co. v. Kirsling,* 139 Idaho 89, 73 P.3d 102, 106–07 (2003); *Osbon v. Nat'l Union Fire Ins. Co.,* 632 So.2d 1158, 1161 (La.1994); *Borman v. State Farm Fire & Cas. Co.,* 198 Mich.App. 675, 499 N.W.2d 419, 422 (1993); *Watson,* 566 N.W.2d at 689; *Volquardson,* 647 N.W.2d at 610; *Lane v. Sec. Mut. Ins. Co.,* 96 N.Y.2d 1, 724 N.Y.S.2d 670, 747 N.E.2d 1270, 1272 (2001). *But see Traders & Gen. Ins. Co. v. Freeman,* 81 F.Supp.2d 1070, 1079 (D.Or.2000) (reaching opposite result). *See generally* William A. McNab, Comment, *Minnesota Loss Payable Clauses in Fire Insurance Policies: Falling Short of the Minimum Coverage Requirements,* 26 Wm. Mitchell L.Rev. 557 (2000); 10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 149:48 (2003).

The Nebraska Supreme Court, for example, reasoned as follows:

[W]hile there is no specifically designated intentional acts exclusion in the [standard policy], it includes other provisions dealing generally with the insurer's right to void coverage based upon conduct of "the insured." In each instance, the standard policy uses language indicative of a several obligation whereby the insured bears the responsibility for his or her own conduct. We find no provision ... creating a joint obligation whereby the wrongful actions of one insured could prejudice the rights of an innocent co-insured.

*Volquardson,* 647 N.W.2d at 610; *see also Watson,* 566 N.W.2d at 691 (because the Minnesota standard fire insurance policy consistently used "the insured" and not "an insured," the policy's intentional loss provision incorporated an additional contract term; the policy thus was "at odds with the rights and benefits of the Minnesota standard fire insurance policy" because it failed to provide coverage for innocent coinsured spouses); *Lane,* 747 N.E.2d at 1272 (same).

■ Farm Bureau contends the foregoing cases are distinguishable because of a difference in the Iowa statute. As indicated, Iowa's statute only prohibits those policies which are not the "substantial equivalent" of the statutory policy. Iowa Code § 515.138. Although this "substantial equivalent" provision is, so far as we can tell, somewhat peculiar to Iowa, it is not unique. *See* 1959 Iowa Acts ch. 329 (adding "substantial equivalent" proviso to standard fire policy). In *Volquardson,* for example, the Nebraska Supreme Court rejected an identical claim. 647 N.W.2d at 609. The relevant Nebraska statute stated a director of insurance may approve a non-standard policy "if such policy with respect to peril of fire includes provisions

which are the substantial equivalent of the minimum provisions of the standard policy." Nebraska Rev. Stat. § 44–501(6) (1998). The Nebraska Supreme Court, however, ruled

> [t]here is an obvious substantive difference between joint and several obligations of multiple insureds with respect to a coverage exclusion based upon conduct. Where the obligation is joint, commission of a proscribed act by one insured voids coverage as to all. However, where the obligation is several, the proscribed conduct defeats the policy rights of the insured who committed the act but not those of an innocent coinsured.

*Volquardson,* 647 N.W.2d at 609. We agree with this assessment, and hold the policy, insofar as it bars recovery to an innocent coinsured spouse, is not the substantial equivalent of Iowa Code section 515.138.

Lastly, we reject Farm Bureau's contention that accepting Ramona's argument "overrules" *Vance.* Farm Bureau maintains we must assume that we considered and rejected Ramona's statutory argument in *Vance,* because in that case we denied recovery to an innocent coinsured spouse—notwithstanding the fact Iowa Code section 515.138 was "on the books" at that time. Farm Bureau points out that *Vance* was written in response to a certified question from the federal district court; certified questions, it alleges, are different than cases taken on direct appeal, because our review in certified questions is not limited to issues raised, briefed, and argued by the parties.

We reject this argument. We were not presented with the standard fire insurance policy in *Vance,* and our answers to certified questions are no different than our decisions on direct appeal, insofar as both proceedings are *adversarial.* In either

sort of case, we generally consider only questions argued by the parties; answers to certified questions should not be understood as all-encompassing court-approved treatises on a given body of law.

Farm Bureau's argument also ignores the organic nature of law: the law develops over time, in no small part due to the ability of lawyers to develop new arguments. Unfortunately, the best arguments are not marshaled before us in every case. We do not, then, "overrule" *Vance,* because in that case we were not presented with the statutory argument. Instead, our decision today simply "adds a second step to the contractual analysis." *Watson,* 566 N.W.2d at 689 (citations omitted).

Because we find the intentional loss provision is unenforceable against Ramona, we need not decide whether it is also rendered unenforceable due to ambiguity.

### B. Concealment or Fraud Exclusion

Having determined the "intentional loss" provision is unenforceable against Ramona, it must still be determined whether she is barred from recovery under the policy's "concealment or fraud" exclusion. Farm Bureau argues Ramona is barred from recovery because she materially misrepresented the extent of personal property destroyed in the fire. In support of its argument, Farm Bureau cites *Webb v. American Family Mutual Insurance Co.,* in which we denied recovery where an insured had "intentionally misrepresented the extent of personal property destroyed and ... the misrepresentation was material." 493 N.W.2d at 812.

On this issue, the district court made only a limited number of factual findings. The record contains contradictory evidence about the condition of numerous items of personal property left in the house after the fire. The court expressly found Ramo-

na submitted a proof of loss form which "contained a substantial number of items . . . not destroyed in the fire." The court later characterized Ramona's actions as a "misrepresentation," but regrettably declined to "answer whether such misrepresentation bars Ramona from recovery." *See id.* at 811 (concealment or fraud clause will not void policy unless inaccuracies in the proof of loss form were made with intent to defraud); *Goldstein v. St. Paul Fire & Marine Ins. Co.*, 124 Iowa 143, 145, 99 N.W. 696, 696 (1904) (same); *Stone v. Hawkeye Ins. Co.*, 68 Iowa 737, 741–42, 28 N.W. 47, 49 (1886) (same).

The procedural posture of this case, then, is manifestly unlike *Webb*. In *Webb*, a jury expressly found the insured had "with intent to defraud, concealed a material fact or circumstance as to the extent of the personal property destroyed." 493 N.W.2d at 810. We concluded there was sufficient evidence to support this finding, and upheld a district court judgment that a similar concealment or fraud exclusion precluded recovery under the insured's policy. *Id.* at 812. In the case at bar, however, there was no corresponding finding in the district court on Ramona's intent.[2]

■ As indicated, appellate review is "limited to assigned error in the district court's application of law pertinent to the controversy." *Stewart*, 590 N.W.2d at 547. In this case, the record does not contain sufficient factual findings to which we might apply the law. Mindful of our proper role, then, we must refrain from deciding matters for ourselves. It makes no difference that this case was decided on stipulated facts. *See Illinois Nat'l Ins.*

*Co. v. Farm Bureau Mut. Ins. Co.*, 578 N.W.2d 670, 671 (Iowa 1998) ("When a case is submitted on stipulated facts, our only task is to construe the provisions of the insurance policies."). Under these circumstances, the only appropriate course of action is to remand the case. On remand, the district court shall make specific factual findings and then, applying the law, determine whether Ramona is barred from recovery under the concealment or fraud exclusion of her policy with Farm Bureau. We vacate the court of appeals' disposition to the contrary.

In a final assignment of error, Farm Bureau contends the court of appeals failed to provide guidance on Ramona's interest in the loss and how much she is entitled to recover. Because we do not decide whether Ramona will ultimately recover under the policy, we do not reach this issue. A ruling on this issue is too speculative at this time, and, in any event, must initially be made by the trial court. *See Wilson v. Ribbens*, 678 N.W.2d 417, 423 (Iowa 2004).

## IV. Conclusion

We hold Iowa's standard fire insurance policy renders unenforceable an "intentional loss" exclusion clause in the Sagers' policy which would otherwise preclude Ramona from collecting. In this respect, we affirm the court of appeals, and reverse the district court. We remand for factual findings and a legal determination as to whether Ramona is barred from recovery under the concealment or fraud exclusion in her Farm Bureau policy.

---

2. Although Farm Bureau and the court of appeals at times approached the issue as whether Ramona's statements are "material," the question is whether Ramona's actions demonstrate an intent to defraud Farm Bureau. "Personal property in an insured's home is 'material' insofar as it is the object of the insurance policy which covers it." *Webb v. Am. Family Mut. Ins. Co.*, 493 N.W.2d at 811.

DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS.