No. 89-122

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

PATRICIA WOODHOUSE,

        Plaintiff and Respondent,

  -vs-

FARMERS UNION MUTUAL INSURANCE COMPANY,

        Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donald L. Ostrem argued; Graybill, Ostrem, Warner &
        Crotty, Great Falls, Montana

    For Respondent:

        Howard F. Recht argued; Recht & Greef, Hamilton,
        Montana

Submitted: October 17, 1989

Decided: January 10, 1990

Filed:

_____
Clerk

Justice John C. Sheehy delivered the Opinion of the Court.


This is an appeal from the District Court of the Fourth Judicial District, Ravalli County. Plaintiff Patricia Woodhouse brought suit, seeking a declaratory judgment that the loss of her personal property by fire be covered by her insurer, Farmers Union Mutual Insurance Co. Defendant (hereinafter "Farmers") counterclaimed, seeking a declaratory judgment excluding coverage for the loss. The District Court found in plaintiff's (hereinafter "Woodhouse") favor on a motion for summary judgment. Farmers appeals from that order. We reverse.

The issue raised by appellant Farmers is:

Whether the District Court erred in its determination that Farmers is obligated to provide coverage for an insured whose co-insured destroyed the property by arson.

Patricia and Alan Woodhouse were divorced on September 24, 1986. Alan Woodhouse was awarded the trailer house the parties had acquired during the marriage. The trailer house and its contents were insured by Farmers, with Patricia and Alan named as the insureds on the policy.

Following the divorce, Patricia Woodhouse left many items of personal property in the dwelling due to lack of storage space elsewhere.

On January 5, 1987, Alan Woodhouse intentionally set fire to the trailer house, and committed suicide within the burning dwelling. The dwelling was totally consumed by the fire.

Patricia Woodhouse submitted a claim to Farmers Insurance for the value of her personal goods lost in the fire. Farmers denied the claim on the basis that coverage

was excluded because the loss was intentionally caused by an insured party.

Farmers maintains that this is a clear contract case. They submit that the "intentional loss" exclusion of the Woodhouse insurance policy acts to deny coverage in this situation. The provision reads as follows:

> We do not insure for loss caused directly or indirectly by any of the following . . . h. Intentional Loss, meaning any loss arising out of any act committed: (1) by or at the direction of an insured; and (2) with the intent to cause a loss.

Arson by an insured, Farmers maintains, is not, therefore, an insured risk. Alan Woodhouse was an insured party who clearly committed an intentional loss. Patricia Woodhouse is a named coinsured party and is therefore bound to the contractual provisions of the policy.

Farmers cites several cases for the premise that clear and unambiguous language of the contract controls. In Amick v. State Farm Fire and Casualty Company (8th Circuit 1988), 862 F.2d 704, the court stated:

> The court sees no injustice in requiring the company to pay only those risks it insured, where, as here, the coverages are spelled out in clear and unambiguous language. Bryan v. Employers National Insurance (Ark. 1988), 742 S.W.2d 557, 577. An innocent co-partner [can] not recover under a policy where arson was committed by a partner because the language of the policy specifically barred recovery. West Bend Mutual Insurance Co. v. Salemi (Ill. 1987), 511 N.E.2d 785.
>
> * * *
>
> The key factor is whether the policy provision barring recovery by an innocent co-insured is clear and unambiguous.

Farmers cites the exclusion clause contained in the policy noted in Spezialetti v. Pacific Employers Insurance Co. (3rd Cir. 1985), 759 F.2d 1139, which reads:

> [The] insurance shall not apply to loss or damage . . . [resulting from] any dishonest act or omission by any insured . . . .

The court in Spezialetti denied the innocent spouse's claim for insurance proceeds, based on the exclusionary language.

Finally, Farmers takes issue with the District Court's reliance on Kulubis v. Texas Farm Bureau Underwriters Insurance Co. (Tex. 1986), 706 S.W.2d 953, for the proposition that an insurer's obligations under such insurance policies are "several and not joint, the wrongful acts of one coinsured cannot be imputed to another as a basis for denying coverage." This, Farmers states, unfairly places the burden of proving the innocence of the non-acting spouse on the insurer. Farmers contends that Kulubis is bad policy, stating that:

> The law should assiduously seek . . . to avoid holding out any incentive to such actions [as arson] and should be diligent to assure that it permits no benefits to be derived from them by their perpetrators. We conclude that it would be a strange rule indeed that guaranteed the would-be arsonist a minimum of one-half of the insured value of his building . . . even were he found guilty of the act, as long as he arranged matters so that the insurance company could not prove that he had let his spouse in on the scheme.

In summary, Farmers contends that the lower court erred by not ruling that the language of the exlusionary clause barred coverage. They maintain that the "clear and unambiguous" policy language of not covering intentional loss applies in the case of arson. All insured parties are thereby denied coverage. To hold otherwise would negate

clear contractual provisions and create potentially harmful precedent.

Woodhouse contends that of the several jurisdictions that have considered this same question, the majority have ruled that the innocent coinsured should recover. Woodhouse states that equity and public policy considerations, the basis of many of these rulings, should also apply in the case at bar. Woodhouse cites Hoyt v. New Hampshire Fire Insurance Co. (N.H. 1942), 29 A.2d 121, as one of the first such cases tending to allow the co-insured to recover. In Hoyt, the court reasoned that an ordinary person "not versed in the nice distinctions of insurance law" would naturally assume their individual interests covered by the insurance policy. The insurer argued in that case, as in the present, that the policy was a contract and the terms were clear and enforceable. The court in Hoyt ruled that as a matter of equity and of public policy, the wrongs of one individual should not be imputed to another. The test, the court stated, was not how the insurer construed the policy language, but what a reasonable person in the position of the insured would have understood it to mean.

Some courts have focused on the language of the policy to make their determination. Woodhouse cites Hildebrand v. Holyoke Mutual Fire Insurance (Me. 1978), 386 A.2d 329, where the court scrutinized the term "insured." The insurer argued, as does Farmers, that the word "insured" included all named insureds. The policy excluded coverage if the loss was caused by an "insured." The court determined that the definition of "insured," when a claim is denied, must be limited to include only the insureds who intentionally cause the loss.

Although the results are undeniably harsh for Patricia Woodhouse, the clear meaning of the contract must govern

here. We concur with Farmers that this is, plainly and simply, a contract case. The provision clearly and unequivocally states that a loss caused by an intentional act of an insured party bars coverage. Alan Woodhouse was clearly an "insured," and his act was clearly intentional. Accordingly, we find that the loss was not covered, and reverse the decision of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices