Susan VANCE, Appellee,

v.

PEKIN INSURANCE
COMPANY, Appellant.

PEKIN INSURANCE COMPANY,
Defendant/Counter-claimant,

v.

Donald A. VANCE, Defendant to
Counter-claim.

No. 89–1633.

Supreme Court of Iowa.

June 20, 1990.

Michael K. Bush of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Kent Hutchinson, and George E. Wright of Napier, Wright & Wolfe, Fort Madison, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

The United States District Court for the Southern District of Iowa has certified two questions to us. First, may an innocent coinsured spouse recover under a fire insurance policy when the other coinsured spouse has been convicted of arson? Second, if the innocent coinsured spouse can recover, what proportion of the casualty loss may such coinsured recover?

Applying a contract analysis to the policy here, we answer the first question no. So we need not answer the second question.

The relevant facts are these. Susan Vance, the plaintiff, and Donald Vance, her husband, are coinsureds under a broad form homeowner's insurance policy. Pekin Insurance Company, the defendant, issued the policy. The policy covers the Vances' residence in Keokuk, Iowa. Susan and Donald hold legal title to the residence as joint tenants.

A provision of the policy provides that [coverage is excluded for] intentional loss ... committed by or at the direction of an insured.

On or about December 15, 1986, a fire caused substantial damage to the Vances' residence and their personal property. The policy was in effect at the time of the fire.

In April 1987 the Vances filed a law action against Pekin in the Iowa district court. The Vances sought to recover these damages under the policy.

In June 1987 Donald was convicted of second-degree arson for setting fire to the couple's residence. In August Donald withdrew as plaintiff in the civil action in the Iowa district court, leaving Susan as the sole plaintiff. There was no evidence that Susan was implicated in the arson. Susan and Donald are still married to each other and living together.

The limited record before us does not show how the federal district court became involved. Nor does it show at what stage of the proceedings the certified questions arose.

■ The question whether arson by one coinsured spouse bars the innocent coinsured spouse from recovering under an insurance policy is one of first impression in this state. Courts have developed three distinct theories of recovery to resolve the question. Several years ago one writer critically examined those theories and the rationales for them. *See, generally, The Problem of the Innocent Coinsured Spouse: Three Theories of Recovery*, 17 Val.U.L.Rev. 849 (1983) [hereinafter *Innocent Coinsured Spouse*].

These three theories of recovery emanated from disagreements whether property or contract law should govern the interpretation of the policy. *Id.* at 852. An innocent coinsured spouse may recover depending on whether the coinsureds' interests under the policy are joint or severable. To resolve this question of interpretation, some courts have used property law principles; other courts have used contract principles. So it is not surprising that the courts have reached conflicting results even though the factual scenario in most cases is remarkably similar. *Id.* at 856.

Two competing public policies have also played prominent roles in the development of these three theories. One includes avoiding a possible benefit to the wrongdoer; the other includes preventing the imposition of fraud on an innocent party. *Id.*

Under the old rule, the innocent spouse could not recover. Courts adhering to the old rule based their decisions on several rationales. Because the policies were usually written in the name of both spous-

es, these courts had little difficulty concluding that the rights and obligations under the policy were joint. *Id.* at 860. *See, e.g., Matyuf v. Phoenix Ins. Co.,* 27 Pa.D. & C.2d 351, 361 (1933); *Kosior v. Continental Ins. Co.,* 299 Mass. 601, 603–04, 13 N.E.2d 423, 424–25 (1938); *Klemens v. Badger Mut. Ins. Co.,* 8 Wis.2d 565, 566–68, 99 N.W.2d 865, 866 (1959), *overruled by Hedtcke v. Sentry Ins. Co.,* 109 Wis.2d 461, ——, 326 N.W.2d 727, 740 (1982).

In addition these courts looked to the nature of the property interest—usually joint tenancy—and the marital relationship to bolster their conclusion that these rights and obligations were joint. *See, e.g., Kosior,* 299 Mass. at 603–04, 13 N.E.2d at 424–25; *Klemens,* 8 Wis.2d 565, 99 N.W.2d 865 (addressing the marital relationship issue); *Cooperative Fire Ins. Ass'n v. Domina,* 137 Vt. 3, 4–5, 399 A.2d 502, 503 (1979); *Rockingham Mut. Ins. Co. v. Hummel,* 219 Va. 803, 805–07, 250 S.E.2d 774, 776 (1979) (addressing the property interest). These courts reasoned that when

> the property is jointly owned ... the [insurance policy] is presupposed to be joint because the insurable interest, like the property interest, is deemed to be indivisible. This presupposition of a joint [insurance policy] is bolstered by the notion that a married couple constitutes a single entity under the law. Since the property interests of a husband and wife are regarded as inextricably intertwined, the [insurance policy] interests also are considered inseparable.

*Innocent Coinsured Spouse,* 17 Val.U.L. Rev. at 858–62.

This reasoning has been criticized—we think rightfully so—both on insurance law principles and present day circumstances:

> Because an insurance [policy] does not insure the property itself, the analogy drawn between the interests in the property and those under the [policy] is questionable. The proceeds of an insurance [policy] are personalty and are held in the same way as any personal property voluntarily acquired. Although the value of the insurance proceeds and that of the property are similar, the proceeds of

an insurance policy are not a substitute for the property. Finally, the reliance on archaic legal fictions, such as the marital "unit" ... is untenable in light of the Married Women Acts and the insurance changes in the legal treatment of marriage and marital property.

*Id.* at 862. In line with this criticism, one court has attacked the old rule as "harsh and inequitable ... [and] ... in need of reexamination." *Hosey v. Seibels Bruce Group, South Carolina Ins. Co.,* 363 So.2d 751, 753 (Ala.1978).

Courts following the old rule generally cite the public policy of avoiding a possible benefit to the wrongdoer as further support for denying recovery to the innocent coinsured spouse. *See, e.g., Matyuf,* 27 Pa.D. & C.2d at 359; *Normon v. State Farm Fire & Cas. Co.,* 804 F.2d 1365, 1366 (5th Cir.1986) (applying Texas law).

Following the suggestion in *Hosey,* some courts did reexamine the rationales underlying the old rule and came up with a second approach. The second approach—known as the rebuttable presumption theory—attempts to "provide a more equitable alternative to the old rule." *Innocent Coinsured Spouse,* 17 Val.U.L.Rev. at 836. Under this theory, whether the rights and obligations under the policy are joint depends on an interpretation of the insurance policy.

According to the rebuttable presumption theory, the innocent spouse is allowed "to rebut the presumption of a joint obligation by proving his or her interests in the property to be severable." *Innocent Coinsured Spouse,* 17 Val.U.L.Rev. at 864. *See, e.g., Erlin–Lawler Enter., Inc. v. Fire Ins. Exch.,* 267 Cal.App.2d 381, 386–87, 73 Cal.Rptr. 182, 186 (1968); *Simon v. Security Ins. Co.,* 390 Mich. 72, ——, 210 N.W.2d 322, 326 (1973); *Ryan v. MFA Mut. Ins. Co.,* 610 S.W.2d 428, 429–34 (Tenn.App. 1980). The public policy of avoiding the imposition of fraud on an innocent party became more important in the eyes of these courts than the policy of preventing a benefit to the wrongdoer. *Innocent Coinsured Spouse,* 17 Val.U.L.Rev. at 864. *See, also, Auto–Owners Ins. Co. v. Eddinger,* 366 So.2d 123, 124 (Fla.App.1979); *Economy Fire & Cas. Co. v. Warren,* 71 Ill.App.3d

625, 28 Ill.Dec. 194, 196–97, 390 N.E.2d 361, 363–64 (1979); *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 142–45 (Ind.App.1981).

The rebuttable presumption theory has been criticized for several reasons. Although the marital relationship is no longer material, property interest is material. If the innocent party cannot prove his or her interest is severable, the wrongful conduct of the other spouse bars the innocent spouse from recovering under the policy. *Hosey*, 363 So.2d 751 (Ala.1978). Proving divisibility of property interest may be difficult if not impossible. *Innocent Coinsured Spouse*, 17 Val.U.L.Rev. at 865. This "property rationale ignores the nature and extent of the parties' rights and duties as expressed by" the insurance policy. *Id.*

In recent years courts have developed a new approach. The new approach is often referred to in the cases as the "best reasoned rule." *Id. See, e.g., American Economy Ins. Co.*, 426 N.E.2d at 142–45; *Winter v. Aetna Cas. & Sur. Co.*, 96 Misc.2d 497, 409 N.Y.S.2d 85, 87 (1978); *Ryan*, 610 S.W.2d at 434–47. Under the new approach, recovery depends—not on property rationales or marital relationships—but on a contract analysis of the insurance policy provisions. *Innocent Coinsured Spouse*, 17 Val.U.L.Rev. at 867–68. *See, e.g., Auto–Owners Ins. Co.*, 366 So.2d at 124. So familiar principles of interpretation peculiar to insurance policies apply. For example, if the policy language is ambiguous, that language is construed against the insurer. *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). *See also Innocent Coinsured Spouse*, 17 Val.U.L.Rev. at 868.

In addition,

the policy against imputing liability for fraud on an innocent person is significantly more important than the possibility of a potential benefit to the wrongdoer. Courts recognize the fundamental injustice of barring recovery under the circumstances because the reasonable person does not expect arson to be imputed as a result of the intentional acts of the spouse. Hence, liability under the fraud clause is several as to each insured under the policy.

*Innocent Coinsured Spouse*, 17 Val.U.L. Rev. at 867–868. *See, e.g., American Economy Ins. Co.*, 426 N.E.2d at 142; *Pawtucket Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 468–69, 190 A.2d 420, 423 (1963).

The new approach is seen as the best reasoned rule because under it courts use a contract analysis and have some concerns for equity. *Innocent Coinsured Spouses*, 17 Val.U.L.Rev. at 868. We agree and adopt the best reasoned rule.

Under a contract analysis, we conclude for reasons that follow that Susan is barred from recovering under the policy.

The following pertinent language appears in the definition section of the Vances' policy:

In this policy, "you" and "your" refer to the "named insured" shown in the declaration and the spouse if a resident of the same household. "We," "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

. . . .

3. "insured" means you and residents of your household who are:

a. your relatives; or

b. other persons under the age of 21 and in the care of any person named above.

The policy is written in the names of "Donald A. and Susan M. Vance." Susan then is a named insured because the policy is written in her name, and because the definitions make it clear that she is.

In the exclusions part of the policy, we find the following pertinent language:

We do not insure for loss caused directly or indirectly by any of the following: such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

. . . .

8. Intentional Loss, meaning any loss arising out of any act committed:

a. by or at the direction of *an* insured.

(Emphasis added.)

The parties agree that the case turns on whether the italicized word "an"

before the word "insured" is ambiguous. The test for ambiguity is whether a reasonable person would read more than one meaning into the word. *Grinnell Mut. Reinsurance Co.*, 431 N.W.2d at 786; *Felder v. North River Ins. Co.*, 148 Wis.2d 130, 132–35, 435 N.W.2d 263, 265 (App. 1988). Measured by this test, the word "an" as used here is not—in our view—ambiguous.

The word "an" is a functional word used "before singular nouns when the referent is unspecified (for example, a man overboard)." *Webster's Ninth New Collegiate Dictionary* 45 (1985). The words "an insured" in the above exclusion means an unspecified insured who commits arson. In short, if any insured commits arson, all insureds are barred from recovering.

Two courts have reached the same conclusion about the use of the words "an insured" in an intentional loss exclusion provision. *See Bryant v. Allstate Ins. Co.*, 592 F.Supp. 39, 41 (E.D.Ky.1984); *Woodhouse v. Farmers Union Mut. Ins. Co.*, 785 P.2d 192, 194 (Mont.1990).

Both courts saw no ambiguity in the words "an insured." In *Bryant* the court characterized the language as being "clear as spring water." *Bryant*, 592 F.Supp. at 81. In *Woodhouse* the court expressed its feeling about the clarity of the language this way:

> Although the results are undeniably harsh for [the innocent coinsured,] the clear meaning of the [policy] must govern here. We concur with [the insurer] that this is, plainly and simply, a contract case. The [exclusion, which is verbatim to the one here,] clearly and unequivocally states that a loss caused by an intentional act of an insured party bars coverage. The [noninnocent insured] was clearly an "insured," and his act was clearly intentional.

*Woodhouse*, 785 P.2d at 194.

Indeed one writer suggests insurers should use such language as a solution to the whole problem:

> Perhaps the best solution to the entire problem is to revise the policy language. If the insurance companies intend the fraudulent acts of one spouse to void the policy as to both, the policy should be redrafted to reflect this position. The desired result could be obtained by substituting the term "the" insured in the fraud provision with "a," "any" or "an" insured. Drafting the policy to expressly deny recovery not only serves the interests of the insurance companies but also advances the public good by discouraging fraud.

*Innocent Coinsured Spouse*, 17 Val.U.L. Rev. at 872. *See also Economy Fire & Cas. Co.*, 71 Ill.App.3d at 629, 28 Ill.Dec. at 197, 390 N.E.2d at 364; *Ryan*, 610 S.W.2d at 437.

We likewise conclude the exclusion here clearly and unequivocally says that a loss caused by an intentional act of an insured party bars coverage. Donald Vance was clearly an insured so his arson bars recovery by any insured under the policy and that includes Susan Vance. We think a reasonable person in Susan's position would read the policy that way.

Our answer in this case to the first certified question is no. Our answer does not depend upon how the insured property is held or upon whether the coinsureds are married. Rather we apply a contract analysis to determine the meaning of the exclusion.

Because our answer to the first certified question denies Susan coverage under the policy, we need not answer the second question.

CERTIFIED QUESTION ANSWERED.