OPINION
On March 25, 1996, Roy White set his own house on fire. During divorce proceedings, his ex-wife sought insurance coverage for the fire loss, and their insurance carrier, Defendant-Appellee West American Insurance, refused to pay.
The following is an accelerated calendar appeal from a final judgment of the Trumbull County Court of Common Pleas which granted summary judgment in favor of appellee, West American Insurance ("West American"), on a complaint filed by appellant, Ruth A. Taft, f.k.a. Ruth A. Raub ("Taft"), alleging breach of contract based on West American's denial of coverage for the fire loss. Specifically, the trial court held that an unambiguous provision within West American's fire insurance policy precluded Taft, an innocent insured under the policy, from recovering for a loss attributable to the fraudulent acts of her ex-husband who was also an insured under the policy. For the reasons that follow, we affirm.
Before reaching the facts of this case and Taft's assignments of error, a review of the standard governing motions for summary judgment is required in order to place the conflict of the parties in its proper perspective. Civ.R. 56(C) states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.* * *"
In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morrisv. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
The present case is somewhat atypical from the customary appeal we see from a trial court's decision to grant a motion for summary judgment in that the parties completely agreed, at least at the trial court level, as to the facts of this case. On March 24, 1997, Taft filed her complaint alleging that West American refused to pay a fire loss she sustained to her home on March 25, 1996, in violation of the terms of an insurance policy issued by West America. On April 22, 1997, West American responded to the complaint and asserted that an exclusionary provision in the insurance policy precluded Taft from recovering for any intentional loss committed by "an insured." Thereafter, on August 11, 1997, the parties entered into the following stipulations:
 "The parties to this action, by their respective counsel hereby stipulate and agree as follows, for purposes of this action:
 "1. [West American] issued a homeowners [sic] insurance policy, Policy No. DHW8577340 ("the Policy"), for the premises known as 309 East Broad Street in Newton Falls, Ohio ("the Premises"). The policy was in effect from December 19, 1995 to December 19, 1996. A copy of the policy is attached as Exhibit A.
 "2. The policy was originally issued to Roy E. White and [Taft].
 "3. In July, 1993, an endorsement notice was issued deleting [Taft] as a named insured.
 "4. A fire occurred at the premises on March 25, 1996 ("the fire").
 "5. The fire was intentionally set by Roy E. White, an "insured" as defined in the Policy.
 "6. Roy E. White plead [sic] guilty to the crime of Attempted Arson, in violation of the Ohio Revised Code Sections 2923.02 and 2909.03(A)(1), a felony of the third degree, in connection with the fire.
"7. The deductible on the Policy is $100.
 "8. [Taft] is an "insured" as defined in the Policy.
"9. [Taft] was not involved in the fire."
A copy of the insurance policy, entered into between the parties, was attached to the parties' stipulations. The policy was divided into two distinct sections: "Section I — Property Coverages," and "Section II — Liability Coverages." Pertinent to this appeal, Section I of the policy insured Taft from damage, otherwise not excluded, occurring to her property from fire. However, West American's policy also contained the following exclusionary language:
"SECTION I — EXCLUSIONS
 "We will not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
 "h. Intentional Loss, meaning any loss arising out of any act committed:
"(1) By or at the direction of an "insured"; and
"(2) With the intent to cause a loss."
On September 11, 1997, West American filed a motion for summary judgment alleging that the above quoted exclusionary language in its insurance policy clearly and unambiguously excluded coverage for any loss resulting from the intentional misconduct of "an insured." As the parties stipulated that Roy White, an insured under the policy, intentionally set fire to the premises, West American argued that Taft was precluded from recovering under the policy for a loss committed by a co-insured. Although acknowledging that Taft had not participated in her co-insured's misdeed, West American believed that it was not required to assume a risk that was not contemplated in the parties' contract of insurance and for which it did not receive a premium.
On October 2, 1997, Taft responded to West American's motion and filed a cross-motion for summary judgment. It must be emphasized at this point that both parties relied solely on the stipulated facts they submitted to the trial court on August 11, 1997. No other evidentiary materials were filed with their motions for summary judgment.
In her cross-motion for summary judgment, Taft argued that West American's policy of insurance was unlawful as it contractually attempted to avoid a duty required by statute. Specifically, Taft argued that R.C. 3929.25 requires that the exclusionary clause found in West American's policy reading "an insured" must be stricken against public policy and replaced with the phrase "the insured." When West American's policy is read in this fashion, Taft argued that it was reasonable to presume that "the insured" responsible for causing the loss would be prohibited from collecting insurance proceeds but that this same prohibition would not apply to "an insured" who had no involvement in the loss.
In support of her public policy position, Taft cited to several states that have enacted standard fire insurance policies that specifically address the problem faced in the case sub judice
and offer protection to an innocent co-insured despite the intentional misdeeds of another insured. For instance, the Supreme Court of Minnesota has interpreted the term "the insured" found in the intentional fraud provision of the Minnesota standard fire insurance policy as evidence of the legislature's intent that innocent co-insured must be permitted to collect insurance proceeds despite an insurance company's attempt to exclude such coverage in a policy prohibiting recovery when "an insured" intentionally caused the loss. Watson v. United Serv.Auto. Assn. (Minn. 1997), 566 N.W.2d 683.[1] Taft argues that the Ohio legislature has similarly expressed such an intention in R.C. 3929.25 which states, in pertinent part, as follows:
 "A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. * * *." (Emphasis added.)
West American denied that Ohio law required the exclusionary clause of its policy to be construed in the manner described in Taft's cross-motion for summary judgment. In response to Taft's motion, West American noted that Ohio, unlike states such as Minnesota, has yet to adopt a standardized form of insurance. West American argued that R.C. 3929.25, commonly referred to as the "valued policy statute," merely prevents insurers from over-insuring property, in an attempt to collect increased premiums, and then paying less than the policy limit if a building burns down and results in a total loss. See McGlone v. MidwesternGroup (1991), 61 Ohio St.3d 113, 115; Myers v. Cincinnati Ins. Co.
(1989), 55 Ohio App.3d 34, 36. Moreover, West American noted the lack of Ohio case law supporting Taft's interpretation of R.C.3929.25 and cited to a decision of the Seventh Appellate District that previously determined that, other than invalidating terms of a policy as they relate to the amount of damages, the valued policy statute could not be used to nullify the terms and conditions of an insurance policy. See Altman v. Central Mfr.Mut. Ins. Co. (1949), 93 N.E.2d 28.
By judgment entry filed December 16, 1997, the trial court determined that the language utilized in the fire insurance policy issued by West American unambiguously excluded Taft from recovery based on the intentional acts of her co-insured. The trial court further rejected Taft's arguments that R.C. 3929.25 was applicable to this case. Thus, the trial court granted appellee's motion for summary judgment and denied appellant's motion. From this judgment, Taft filed a timely notice of appeal and now asserts the following two assignments of error:
 "[1.] The trial court erred to the prejudice of [Taft] in granting [West American's] motion for summary judgment.
 "[2.] The trial court erred to the prejudice of [Taft] in ruling that the language of the policy does not violate public policy and is not inequitable."
In the first assignment of error, Taft argues that the trial court erred in granting West American's motion for summary judgment without any consideration as to the terms of the insurance contract between the parties and whether her interest in the property damaged by fire was joint or severable from a co-insured who was responsible for the loss. It must be noted that Taft's arguments are a complete about face from those raised in her cross-motion for summary judgment which, at least implicitly, conceded that the policy as written would preclude her recovery. While an appellate court generally will not consider any "error" that the complaining party failed to raise before the trial court, we will address Taft's arguments in this case.
For the past several years, courts have grappled with the question of whether a loss caused by the intentional misdeeds of an insured should bar recovery for the loss to the insured spouse or another innocent co-insured. Recently, courts have resolved this question by engaging in an analysis of the insurance policy to determine the parties' intent. The Supreme Court of Ohio has summarized the recent developments in this area as follows:
 "Different theories have emerged concerning whether the fraudulent behavior of one spouse should be automatically imputed to the other co-insured spouse without proof of the latter's misconduct. See Vance v. Pekin Ins. Co. (Iowa 1990), 457 N.W.2d 589, and cases cited therein. Traditionally, older cases automatically denied an innocent spouse the right to recover under an insurance policy if the other spouse had committed misconduct, as to the rights and obligations of the parties under the contract were presumed to be joint. These older cases were based on the property ideal of the unseverability of estates, the notion that a husband and wife were a single entity, and concern that the guilty party would indirectly benefit through the innocent spouse because of the complicity of the marital relationship. See, e.g., Matyuf v. Phoneix Ins. Co. (1933), 27 Pa.D C.2d 351; Kosior v. Continental Ins. Co. (1938), 299 Mass. 601, 13 N.E.2d 423; Watkins Schoenig, Property Insurance and the Innocent Co-Insured: Was it All Pay and No Gain for the Innocent Co-Insured? (1995), 43 Drake L.Rev. 893, 896-897. However, modern cases have properly rejected this reasoning and instead have adopted an approach based on contract principles to determine whether the parties intended joint or several coverage. Vance v. Pekin Ins. Co., 457 N.W.2d at 592; Watson v. United Serv. Auto. Assn. (Minn. 1997), 566 N.W.2d 683, 688-689; Buckeye Union Ins. Co. v. Phillips (Aug. 7, 1986), Defiance App. No. 4-84-7, unreported, 1986 WL 8684. In determining whether the parties contemplated joint or several coverage, the terms of the contract are to be considered, Vance, 457 N.W.2d at 592, and `[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.' King v. Nationwide Ins. Co.
(1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus." Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 291.
It is Taft's contention that, pursuant to the analysis inWagner, the trial court did not consider the terms of the insurance contract to determine whether the parties intended joint or several coverage between herself and Roy White, the co-insured actually responsible for the loss. Taft's statement in this regard is patently false. In its judgment entry, the trial court specifically found that Taft was barred from recovery based on the exclusionary clause found in West American's insurance policy.
The trial court's interpretation of the insurance contract is in accord with established precedent throughout the United States. In construing the intent of the parties in an insurance contract, courts have determined that language excluding coverage in the event of fraud by "the insured" applies only to the insured who committed the fraud and has no application to an innocent co-insured. See, e.g., Republic Ins. Co. v. Jernigan (Col. 1986),719 P.2d 331, 333. However, language such as that found in West American's policy, excluding coverage when "an insured" has intentionally committed the loss, unambiguously precludes a co-insured from recovery. See, e.g., Vance v. Pekin Ins. Co.457 N.W.2d at 592-593. See, also, Rena, Inc. v. Brien (N.J. 1998),708 A.2d 747 for a comprehensive review of the cases throughout the country that have determined this issue.
In further support of her argument, Taft attempts to create ambiguity in the policy by referring to a clause in Section II of the insurance policy with West American, relating to liability coverage (such as bodily injury), which includes a severability clause. Specifically, Section II of the policy states that "[t]his insurance applies separately to each `insured.'" This clause is notably absent from Section I of the policy relating to the property coverage that Taft seeks to recover in this case.
We refuse to seriously misconstrue the terms of an entirely separate and distinct section of an insurance contract to other forms of coverage also provided in the policy. To the extent that Taft now finds differences between the two sections of the policy, which invariably exist between two separate forms of coverage, we hold that any ambiguity she has read in these two distinct forms of coverage is unreasonable in this case.
Finally, Taft attempts to create further ambiguity in the policy by referring to a provision in Section I of the policy, relating to the applicable property coverage, which permits a named mortgagee to recover its interest in the property despite any denial of coverage to the insureds. Taft argues, for the first time on appeal, that she may qualify as a mortgagee under the policy pursuant to the terms of her divorce from her co-insured, Roy White, who was responsible for the fire. Taft acknowledges that the record contains no information as to the terms of her divorce from the co-insured. However, Taft contends that the trial court erred in failing to take judicial notice, upon its own motion, of proceedings held before the Domestic Relations Division of the Trumbull County Court of Common Pleas.
As previously noted, Civ.R. 56 places the burden on the parties to submit evidence to the trial court when a motion for summary judgment is filed. The trial court is under no obligation, as argued by Taft, to locate evidence that may be favorable to the parties' position in a motion for summary judgment.
Based on the foregoing, the arguments raised in Taft's first assignment of error are without merit.
Turning to the second assignment of error, Taft argues that West American's insurance policy is contrary to public policy. The arguments raised in this assignment of error are closer to those made by Taft below in her cross-motion for summary judgment. However, on January 19, 1999, the day before this matter was to be heard for oral argument, Taft filed a motion seeking to waive her second assignment of error.
We have granted Taft's request in this matter. However, we will remind Taft, for a second time, that an appellate court is under no obligation to consider any "error" that the complaining party did not raise before the trial court. The waiver of Taft's second assignment of error, consisting of the only arguments she raised before the trial court, could have resulted in a straight dismissal of this case.
Based on the foregoing, the judgment of the trial court is affirmed. _________________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J.,
NADER, J., concur.
[1] The State of Minnesota has adopted a standard fire insurance policy in order to "`do away with the evils arising from the insertion in policies of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under the contract.'" Watson, 566 N.W.2d at 690, citing Heim v.American Alliance Ins. Co. of New York (Minn. 1920), 180 N.W. 225, 226. The insurance policy in the case sub judice is an example of such an ingeniously worded contract. Unlike Ohio, the Minnesota legislature has enacted a standard fire insurance policy which requires insurance companies to pay the claims of an innocent co-insured despite the intentional acts of an "insured." Id.