**MONTGOMERY MUTUAL
INSURANCE COMPANY,
Plaintiff,**

v.

**Diana F. DYER and Gregory
Dyer, Defendants.**

**No. 3:00CV00079.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 6, 2001.

Robert S. Reverski, Jr., Niles, Barton & Wilmer, Baltimore, MD, for Plaintiff.

Roy David Bradley, Bradley Law Firm, P.C., Madison, VA, for Defendants.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court are the parties' cross motions for summary judgment. This matter was referred to United States Magistrate Judge B. Waugh Crigler for proposed findings of fact, conclusions of law, and a recommended disposition. *See* 28 U.S.C. § 636(b)(1)(B) (West 1993 & Supp. 2000). On August 28, 2001, the Magistrate Judge issued a Report and Recommendation wherein he recommended that the court grant defendant Diana Dyer's motion for summary judgment. Both the plaintiff and defendant Diana Dyer filed timely objections. This court has reviewed the case *de novo. See id.;* Fed R. Civ. P. 72(b). Having thoroughly considered the entire case and all relevant law, the court shall grant defendant Diana Dyer's motion for summary judgment.

### I.

The plaintiff, Montgomery Mutual Insurance Company, filed this action for declaratory relief for a determination of its obligations under an insurance contract with the defendants. Specifically, the plaintiff asked for a determination of whether it was liable to Diana Dyer for property loss caused when her son, Gregory Dyer, set fire to her house.

On March 24, 2000, the defendant, Diana Dyer, entered into a contract for homeowner's insurance with the plaintiff. Gregory Dyer, the son of Diana Dyer, lived in her house, and as such, is an

insured under the policy.[1]

On April 11, 2000, Gregory Dyer set fire to his mother's house. This was after he fired a firearm at the house and before he drove his pickup truck into the flames. He said he was Jesus Christ to the police officers who found him ranting and standing on the bed of his truck amidst the flames. Later that evening, he told a mental health professional: "One of the best things I've ever done is to burn down my house." (Uniform Pre–Admission Screening Form, at 3). According to a physician who evaluated him the next day, Mr. Dyer indicated that he had felt "the presence of spirits" which spurred his actions "to erase negative associations that he claims are embedded in his house." (Comprehensive Psychiatric Update at 1–2). Nobody was injured in the blaze, but the damage was estimated at $248,000. Mrs. Dyer subsequently filed a claim in proper form with the plaintiff.

In a letter dated June 28, 2000, the plaintiff denied Mrs. Dyer's claim under the "Intentional Loss Exclusion" clause of the original policy which read:

1. We do not insure for loss caused directly or indirectly by any of the following. [ . . . ]

h. **Intentional Loss**, meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

(Homeowner's Agreement, Section I—Exclusions at 10)

The plaintiff concluded that Gregory Dyer was an insured, that he had admitted to starting the fire and that therefore, under the intentional loss exclusion, no insured could recover under the policy.

The language relied on by the plaintiff had in fact been amended by an endorsement to the policy, entitled "Special Provisions—Virginia." The endorsement provides that:

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss.** We do not provide coverage for an "insured" who commits or directs an act with the intent to cause a loss.

(This is item 1.h. in Form HO 00 03.)

(Endorsement at 2)

The parties now agree that the exclusion clause contained in the endorsement applies in this case.

In this suit for declaratory relief, filed on September 7, 2000, the plaintiff requests that the court find that Gregory Dyer set the fire, that Greg Dyer is an "insured" under the policy, and that all the defendants are barred from recovery pursuant to the intentional loss exclusion of the policy.

The defendant moved for summary judgment on the grounds that the applicable exclusionary language precluded coverage only if the insured seeking coverage was the wrongdoer. Hence, an innocent co-insured may recover. In addition, the defendant argued that the severability provision in the liability section of the insurance contract is applicable to property damage claims, and that her son did not have the requisite intent for exclusion of the loss.

The plaintiff also moved for summary judgment on the grounds that the loss committed was intentional, and thus, was

---

**1.** An insured is defined under the policy as:
   3. "Insured" means you and residents of your household who are:
     a. Your relatives; or

     b. Other persons under the age of 21 and in the care of any person named above.
(Homeowner's Agreement at 1)

precluded under the policy. Furthermore, the plaintiff argues that the exclusion clause creates a joint obligation upon both Mrs. Dyer and her son, a co-insured, to refrain from causing an intentional loss.

Magistrate Judge Crigler found that although Mrs. Dyer's son did have the intent necessary to make this an intentional loss under the insurance contract, the language of the policy allowed for Mrs. Dyer to recover. Namely, the amended language of the intentional loss exclusion denies coverage only to the insured who is responsible for the loss. Since Mrs. Dyer is the insured seeking coverage here and she did not set the fire, she is entitled to recover.

Both sides filed objections to the Magistrate Judge's report. The defendant continues to assert that her son lacked the requisite intent and that the severability provision of Section II of the policy applies to Section I. The plaintiff, meanwhile, objects to the Magistrate Judge's interpretation of the exclusionary language and proffers its own version to this court. The court reviews *de novo* those portions of the Report and Recommendation to which objection was made. *See* 28 U.S.C.A. § 636(b)(1) (West 1993 & Supp.2001).

## II.

A party is entitled to summary judgment when the pleadings and discovery show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[S]ummary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo, Inc.,* 203

F.3d 274, 279 (4th Cir.2000) (quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). If the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, then there are genuine issues of material fact. *See* 477 U.S. at 248, 106 S.Ct. 2505. All facts and inferences shall be drawn in the light most favorable to the non-moving party. *See Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.,* 202 F.3d 223, 227 (4th Cir. 2000).

### A.

The court will first address the defendant's objection to the Magistrate Judge's finding that Gregory Dyer acted in such a way as to meet the intent requirement of the exclusion clause. The clause requires that the act have been committed "with the intent to cause a loss." The defendant contends that Gregory Dyer's mental state was such that he did not possess the specific intent necessary under the insurance policy. The plaintiff argues, and the Magistrate Judge agreed, that under Virginia insurance law, a person acting with intent is only required to possess a "minimal degree of awareness of his actions." *Johnson v. Insurance Co. of North America,* 232 Va. 340, 347, 350 S.E.2d 616, 620 (1986).[2]

In *Johnson,* the Virginia Supreme Court found that an insured, who shot an acquaintance six times because he claimed that God had ordered him to do so, did intend to commit the act for purposes of the exclusionary clause of the insurance policy. The *Johnson* court rejected the argument that the act of an insured who suffers from a mental illness cannot be

---

**2.** The parties executed the insurance contract and intended it to be performed in Virginia, thus Virginia law controls in this case.

treated as intentional. The court explained that such an act may be intentional within the meaning of the exclusion where evidence shows "that the actor understood the physical nature and consequences of his conduct, and had the purpose and volition to cause the injury, although he was mentally incapable of distinguishing between right and wrong." *See id.* at 346, 350 S.E.2d 616.

The court supports its conclusion by noting that the "two elements of the *M'Naghten* rule, nature-of-the-act test and right-wrong test, logically can be separated." *See id.* at 347, 350 S.E.2d 616. For the purposes of insurance law, it is sufficient to show that an insured knew the nature of his act. *See id.* at 347–8, 350 S.E.2d 616. In *Johnson,* this meant that when the insured aimed the pistol at the victim, he knew that he was shooting a human being and not, "for example, that he was peeling a banana." *See id.* at 347, 350 S.E.2d 616.

Similarly, in this case, Gregory Dyer knew when he doused the house in gasoline and ignited it that he was setting a fire. In statements made after the incident, Mr. Dyer demonstrated that he knew the nature of his act. For example, he stated: "One of the best things I've ever done is burn down my house" (Uniform Preadmission Screening Form at 3) and "There was too much bad [expletive deleted] that had gone on in that house, so I tried to burn it." (Central State Hospital History Form at 1).

The defendant attempts to distinguish *Johnson* from the facts in this case. Mrs. Dyer notes that the *Johnson* perpetrator exhibited calm resolve and preparation before committing the shooting. *See Johnson,* 232 Va. at 347, 350 S.E.2d 616. In contrast, Gregory Dyer's behavior was, among other things, agitated and hostile. The defendant argues that an act is intentional only if the perpetrator intended to cause harm. According to the defendant, Gregory Dyer "set fire to his mother's house without the intent to cause harm, but to eliminate 'spirits'." (Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 7). For support, the defendant relies on a Virginia tort case, *Infant C. v. Boy Scouts of America, Inc., et al.,* in which the court in its negligence analysis stated:

> An actor guilty of intentional misconduct must intend to cause harm to another. *See, e.g., Johnson v. Insurance Co. of No. America* [ . . . ] (actor understood nature and consequences of his conduct and had purpose and volition to cause injury). An actor guilty of willful and wanton conduct intends his act, but not the resulting harm.
>
> 239 Va. 572, 582, 391 S.E.2d 322, 328 (1990)

The court views this as an accurate restatement of the *Johnson* holding and not, as the defendant would argue, a radical departure from it. The problem with the defendant's contention that Gregory Dyer acted as he did in order to rid the house of spirits is that under Virginia law, it does not matter why Gregory Dyer committed the act. The key question, as the referenced passage from the *Infant C* case also reflects, is whether Gregory Dyer understood that he was setting a fire, and whether he knew that doing so would result in damage to the house. Even when the court construes the facts most favorably to the defendant, as it must in ruling on the plaintiff's summary judgment motion, the undisputed facts are that Gregory Dyer knew he was setting a fire and knew that this would result in the destruction of the house. To apply the language of the *Johnson* court, Gregory Dyer possessed at least a minimal degree of awareness of his act. For these reasons, the court overrules the defendant's objections to the

finding of the Magistrate Judge that Gregory Dyer set fire to the house with intent to cause a loss.

## B.

█ In her motion for summary judgment, Mrs. Dyer asserts that the severability clause located in Section II of the policy agreement is applicable to all sections of the policy, including Section I. Mrs. Dyer objects to the Magistrate Judge's rejection of her argument. Section I of the insurance policy, entitled "Property Coverages," describes the terms by which the insurance company will cover various types of damage to the policy holder's property. Section II, entitled "Liability Coverages," discusses when the insurer is required to indemnify an insured who has been sued by a third party for bodily injury or property damage. The severability clause, located in "Section II—Conditions," reads:

2. Severability of Insurance. This insurance applies separately to each "insured." This condition will not increase our limit or liability for any one "occurrence."

(Form HO 00 03, at 19)

The defendant interprets this clause to apply to the whole policy, and thus to Section I. According to the defendant, other clauses in this section contain specific limiting phrases, such as, "under Coverage E", or "Under the coverage—Damage to Property of Others." As "[t]his insurance" is not followed by a limiting phrase, the defendant concludes that it refers to the entire policy.

█ The defendant, citing *Bankers & Shippers Insurance Company of New York v. Watson et al.*, then argues that where a severability clause exists, it is proper to restrict a clause discussing "the insured" to include only the person claiming coverage. 216 Va. 807, 815 224 S.E.2d

312, 317 (1976). Hence, Mrs. Dyer believes she has an interest in the policy separate from her son and can recover. The defendant correctly states the law with regard to the effect of a severability clause. However, the *Bankers & Shippers* court also noted that such a clause "was placed in insurance policies for some purpose, and for courts to ignore that purpose would render the clause meaningless." *Id.* Common sense dictates that the severability clause was placed in Section II of the policy in order to apply to Section II of the policy. To find otherwise would ignore the structure of the insurance policy, and such a finding would run contrary to Virginia law. Namely, a court must look to "the form of the insurance contract to determine the rights and liabilities of the parties." *K & W Builders, Inc. v. Merchants and Business Men's Mutual Ins. Co., et al.*, 255 Va. 5, 10, 495 S.E.2d 473, 476 (1998). Here, the severability clause is located in "Section II–Conditions." The defendant asks the court to pull this clause out of its logical context and apply it to the entire policy. The court points out that were the clause to apply to Section I as well, the plaintiff could simply have placed it in the next section of the policy, entitled "Sections I and II—Conditions." Yet, that subsection contains no such clause.

The court therefore perceives no ambiguity in the language of the clause or its location in the policy. It finds that the effect of the severability clause is to establish that the interests of co-insureds are severable with regard to liability coverage only. Accordingly, the defendant's objection regarding the applicability of the severability clause is overruled.

## C.

█ Finally, the court takes up the plaintiff's objection to the finding of the Magistrate Judge that under the language of the intentional loss exclusion clause, Mrs. Dyer may recover. The plaintiff as-

serts that this clause creates a joint duty, the result of which is to prevent innocent co-insureds from recovering for the intentional act of another co-insured.[3] The clause reads:

> **Intentional Loss.** We do not provide coverage for an "insured" who commits or directs an act with the intent to cause a loss.
>
> (Endorsement at 2)

The plaintiff, relying on a dictionary, argues that "for" in the above-cited clause actually means "on behalf of". The plaintiff then explains that "who" merely limits the applicability of the exclusion to the acts of insureds, as opposed to non-insureds. Finally, the plaintiff reads "an insured" to mean "any insured." If the plaintiff's suggestions are followed, the clause would read:

> We do not provide coverage on behalf of any insured, as opposed to any non-insured, who commits or directs an act with the intent to cause a loss.

The court finds that even with these verbal gymnastics, the plaintiff fails to make its case.

The plaintiff's interpretive focus has been on the term "an insured." Indeed, the court received ample case-law from the plaintiff to support the contention that "an insured" means any or all insureds. *See, e.g., Watson v. USAA,* 566 N.W.2d 683 (Minn.1997) *and Vance v. Pekin Ins. Co.,* 457 N.W.2d 589 (Iowa 1990). However, such a substitution would not change the meaning of the clause at issue in this case.

The court acknowledges that many courts have interpreted intentional loss exclusionary clauses to preclude coverage for defendants like Mrs. Dyer, that is, for innocent co-insureds. *See, e.g., Allstate Ins. Co. v. Gilbert,* 852 F.2d 449 (9th Cir.1988); *see also Vance v. Pekin Ins. Co.,* 457 N.W.2d 589 (Iowa 1990) *and Travelers Ins. Co. v. Blanchard,* 431 So.2d 913 (La.Ct.App. 1983). However, the language of the clauses at issue in those cases differs from the clause in this case. For example, in *Vance,* coverage was excluded for intentional loss "committed by or at the direction of an insured." 457 N.W.2d at 590.[4] In *Blanchard,* the exclusion clause stated: "We do not cover bodily injury or property damage intentionally caused by 'an insured' person." 431 So.2d 913, 914. And in *Gilbert,* the Ninth Circuit interpreted two exclusion clauses. The first precluded coverage for "bodily injury or property damage intentionally caused by an insured person," while the second denied recovery for "bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." 852 F.2d at 451.

This court found no case law which involved exclusionary clause language identical or similar to that used here. Therefore, the court, guided by the rules of English grammar and bound by the well-settled principles of Virginia insurance law, will look to the form of the clause to determine whether it creates a joint or

---

**3.** The court notes no such joint obligation can be construed from the property ownership as it is undisputed that Mrs. Dyer holds title to the house and as such does not share legal interest in the property with her son. The court, therefore, moves directly to an analysis of whether such an obligation can be construed from the language of the insurance contract. *See Rockingham Mut. Ins. Co. v. Hummel,* 219 Va. 803, 806, 250 S.E.2d 774, 776 (1979).

**4.** This language is similar to the language of the exclusion clause in Mrs. Dyer's original policy. The court recognizes that had the plaintiff left untouched the original exclusion clause, Mrs. Dyer would be unable to recover. However, the endorsement makes clear, and the parties agree, that the new clause replaces the old one, and it is thus the new one which the court must interpret.

severable interest. *See K & W Builders,* 255 Va. at 10, 495 S.E.2d 473 (looking to the form of the insurance contract and determining that use of "you" includes all insureds).

The relative clause, "who commits or directs an act with the intent to cause loss," defines or identifies the person to whom the clause refers, that is, "an insured." The court finds that this language creates a severable interest. This is true whether "an insured" means one insured, any insured or all insureds, as the relative clause is still modifying the term. Thus, any insured who commits or directs an intentional loss will be denied coverage under the language. Logically, any insured, who has not committed or directed such a loss, will receive coverage if sought. As the defendant notes, the exclusionary clause is constructed to place emphasis on the person committing the act, not on the act itself. Contrast this with the clauses quoted above where the emphasis is clearly on the act. Were Gregory Dyer to seek coverage under Mrs. Dyer's policy, he would be denied. The parties do not dispute that he set the fire in question. Therefore, he would be an insured who committed or directed an act with the intent to cause a loss. Likewise, the parties do not dispute that Mrs. Dyer had nothing to do with that fire. The court finds that Mrs. Dyer is not "an insured who commits or directs an act with the intent to cause loss." As such, Mrs. Dyer should recover under her policy for the losses resulting from her son's actions.

██ Even if the court accepted the plaintiff's understanding of the clause as equally plausible, the clause then becomes ambiguous and, in Virginia, such ambiguity is construed in favor of the policy holder. *See St. Paul Ins. v. Nusbaum & Co.,* 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984)("Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it."). Hence, Mrs. Dyer still gets coverage. The court therefore overrules the plaintiff's objection and finds, as a matter of law, that the fire loss suffered by the defendant is covered, and not excluded, by the instant policy of insurance.

### III.

For the foregoing reasons, the plaintiff's motion for summary judgment shall be denied, and the defendant's summary judgment motion shall be granted.

The court notes that the defendant Diana Dyer filed the motion for summary judgment, and indeed all her pleadings, solely on her behalf. Montgomery Mutual Insurance Company named both Diana Dyer and Gregory Dyer as defendants in this action. A return of service on the summons was returned executed as to Gregory Dyer on October 19, 2000. However, Gregory Dyer has never made an appearance before the court, nor has a representative appeared on his behalf. As such, the court shall dismiss this case as to Diana Dyer only.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum, it is accordingly this day

### ADJUDGED, ORDERED, AND DECREED

as follows:

1. The Magistrate Judge's Report and Recommendation, filed August 28, 2001, shall be, and it hereby is, ACCEPTED;

626

2. Defendant Diana Dyer's objections, filed September 7, 2001, shall be, and they hereby are, OVERRULED;

3. Plaintiff's objections, filed September 17, 2001, shall be and they hereby are, OVERRULED;

4. Defendant Diana Dyer's "Motion for Summary Judgment," filed July 27, 2001, shall be, and it hereby is, GRANTED, in that the court FINDS as a matter of law, that the fire loss suffered by the defendant is covered, and not excluded, by the instant policy of insurance; and

5. Plaintiff's "Cross–Motion for Summary Judgment," filed August 3, 2001, shall be, and it hereby is, DENIED.

The Clerk of the Court is instructed to dismiss this case with prejudice as to Diana Dyer. The Clerk of the Court is also directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.